Kathleen **BORKOWSKI,**
**Plaintiff–Appellant,**

v.

**VALLEY CENTRAL SCHOOL
DISTRICT, Defendant–
Appellee.**

**No. 447, Docket 94–7254.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1994.

Decided Aug. 10, 1995.

Howard Schell Reilly, Poughkeepsie, NY (Mid–Hudson Legal Services, Inc., on brief), for appellant Kathleen Borkowski.

Robert D. Cook, Kingston, NY (Cook, Tucker, Netter & Cloonan, P.C., on brief), for appellee Valley Cent. School Dist.

Before NEWMAN, Chief Judge, and WALKER and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Can a teacher with disabilities, whose disabilities directly affect her capacity to per-

form her job, insist that her employer provide a teacher's aide as a form of reasonable accommodation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794? That question is at the heart of this appeal from the entry by the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) of summary judgment for the defendant Valley Central School District ("the School District"). We acknowledge that, on a proper factual showing, the answer may prove to be "no." But because we believe that issues of material fact have not been resolved, we vacate the entry of judgment in favor of the School District and remand the matter for further proceedings consistent with this opinion.

## I.

In 1972, as a result of a motor vehicle accident, Kathleen Borkowski suffered a major head trauma and sustained serious neurological damage. During long years of difficult rehabilitative therapy, Ms. Borkowski's condition improved significantly. She was unable to make a complete recovery, however. According to her treating physician and to a psychologist who evaluated her in connection with this litigation, Ms. Borkowski has continuing difficulties with memory and concentration, and as a result has trouble dealing with multiple simultaneous stimuli. In addition, Ms. Borkowski's balance, coordination, and mobility continue to show the effects of her accident.

In the fall of 1987, Ms. Borkowski applied for the position of library teacher with the School District. During interviews with School District officials, Ms. Borkowski discussed her accident and its lingering consequences. Following these interviews, Ms. Borkowski was appointed to serve as a library teacher at two elementary schools within the school district. Ms. Borkowski's duties as a library teacher went beyond those of a librarian; she also was responsible for teaching library skills to classes of elementary school students.

Ms. Borkowski's appointment was for a probationary term. Under New York law, such a term may last up to three years. At the end of the third year, unless the teacher and the school district agree to extend the probationary term for a fourth year, a decision is made whether or not to grant the teacher tenure. If tenure is not granted, the teacher's employment is ended. *See* N.Y.Educ.Law § 3012 (McKinney 1981 & Supp.1994).

During her three years of probationary employment, Ms. Borkowski received regular performance evaluations. These were based on observations of Ms. Borkowski's work by the Superintendent of the School District, James Coonan, the district's Director of Elementary Education, Robert Schoonmaker, and the principals of the two schools at which Ms. Borkowski taught, Harvey Gregory and John Schmoll. While Mr. Gregory's evaluations generally were positive, those of Messrs. Schoonmaker and Schmoll were not. Of particular significance was an unannounced observation of Ms. Borkowski's class by Mr. Schmoll during Ms. Borkowski's third and final year of probationary employment. Based on his observation, Mr. Schmoll found that Ms. Borkowski had difficulty controlling the class and noted that students had talked, yelled, and whistled without being corrected. Mr. Schmoll also criticized Ms. Borkowski for remaining seated during the lesson. He concluded that little learning had occurred during the observed class.

In the spring of 1990, Mr. Coonan, as Superintendent of the School District, determined that Ms. Borkowski should not be granted tenure. Mr. Coonan informed Ms. Borkowski of this decision on May 1, 1990. Two weeks later, replying to Ms. Borkowski's inquiry, Mr. Coonan set forth in writing the reasons for the denial of tenure. Mr. Coonan focused primarily on what he termed Ms. Borkowski's poor classroom management; he also noted that it was inappropriate for Ms. Borkowski to remain seated during class. In response, Ms. Borkowski, citing her disability, requested reconsideration of the tenure decision, but stated that if reconsideration was denied she would resign. Having received no answer from the School District, Ms. Borkowski submitted her resignation on June 1, 1990. Ms. Borkowski subsequently offered to provide the School District with a letter from her neurologist detailing her dis-

ability. The School District responded that Ms. Borkowski's disability "had absolutely nothing to do with" the decision to deny her tenure. The present action ensued.

## II.

■ The basic framework of a claim of employment discrimination under Section 504 of the Rehabilitation Act is well settled. To prevail on her claim, Ms. Borkowski must establish that (1) she is an individual with a disability within the meaning of the Act, (2) she is otherwise qualified to perform the job in question, (3) she was excluded from the job solely because of her disability, and (4) her employer received federal funding. *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2279, 132 L.Ed.2d 283 (1995); *see also Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *Guice–Mills v. Derwinski*, 967 F.2d 794, 797 (2d Cir.1992); *Doe v. New York Univ.*, 666 F.2d 761, 774 (2d Cir.1981).

For the purposes of its motion for summary judgment, the School District concedes that Ms. Borkowski is an individual with a disability within the meaning of the Act. It is also undisputed that the School District receives federal funds. The matter therefore turns on the second and third elements of the claim, namely, whether Ms. Borkowski was otherwise qualified for the position of tenured library teacher, and whether she was denied that position solely on the basis of her disability.

The School District and the district court misapprehend the nature of the inquiry into whether Ms. Borkowski was otherwise qualified and whether her termination was due to her disability. Ms. Borkowski claims, and the School District concedes, that she was otherwise qualified in a formal sense, in that she had the necessary educational background and certifications to be hired. But the School District, relying on New York Education Law § 3012, maintains that it nev-

ertheless had broad statutory authority to exercise discretion in deciding whether or not to give her tenure. And, in part on that basis, the district court granted summary judgment. We do not question the School District's discretionary authority to make tenure decisions; that authority, however, is circumscribed by the requirements of Section 504. By determining that Ms. Borkowski's performance was inadequate without considering whether her known disabilities could be accommodated reasonably, and by relying on that determination to justify denying her tenure, the School District in effect concluded that Ms. Borkowski was not otherwise qualified and that she could be dismissed. It is this decision that brings her claim within the bounds of Section 504, and requires us to examine whether, under the terms of that section, Ms. Borkowski (1) was, in fact, otherwise qualified for tenure, and (2) was denied tenure solely because of her disability.

### 1. Was Ms. Borkowski otherwise qualified for the position of tenured library teacher?

■ Although the phrase "otherwise qualified" is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear: an individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation. *See School Bd. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *Gilbert v. Frank*, 949 F.2d 637, 641–42 (2d Cir.1991). This definition plays off the regulatory language that requires an employer to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 34 C.F.R. § 104.12(a); 45 C.F.R. § 84.12(a).[1]

1. In 1992, the Rehabilitation Act was amended to replace references to "handicap" with the word "disability." *See* Pub.L. 102–569, § 102(p)(32) (1992). The regulations implementing Section 504, however, have not yet been amended to reflect this change and still speak in terms of "handicap."

a. *The allocation of the burdens of production and persuasion*

But what is a *reasonable* accommodation, and what is an *undue* hardship? These terms do not appear in the text of Section 504 itself; they are, rather, the creations of the regulations that implement Section 504. *See* 34 C.F.R. § 104.12; 45 C.F.R. § 84.12.

The regulations define reasonable accommodation only by example:

Reasonable accommodation may include: (1) making facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters, and other similar actions.

34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b). And they say nothing about who bears the burden of demonstrating that an accommodation is reasonable.

The definition of undue hardship is more explicit. The regulations state that the following factors are to be considered in determining whether a particular accommodation would cause an undue hardship:

(1) The overall size of the [employer]'s program with respect to number of employees, number and type of facilities, and size of budget;

(2) The type of the [employer]'s operation, including the composition and structure of the recipient's workforce; and

(3) The nature and cost of the accommodation needed.

34 C.F.R. § 104.12(c); 45 C.F.R. § 84.12(c). The regulations, moreover, appear to place on the employer the burden of producing evidence and persuading the factfinder that an undue hardship would exist. They state: "[An employer] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 34 C.F.R. § 104.12(a); 45 C.F.R. § 84.12(a).

Given the rather obscure regulatory language, it is perhaps not surprising that courts have struggled to give content to the terms reasonable accommodation and undue hardship. It is also not surprising, in view of the lack of any direct statutory guidance, that they have found the assignment of the burdens of production and persuasion particularly difficult as to reasonable accommodation.

The D.C. Circuit, for example, places the burden of both production and persuasion on the plaintiff. *See Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994). The D.C. Circuit divides the issue of reasonable accommodation into two elements. First, the accommodation must be effective—that is, the plaintiff must show that the accommodation allows her to perform the essential functions of the job in question. *See Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir. 1994). Second, the plaintiff must show that the accommodation is reasonable in terms of the burdens that it places on employers. *Barth,* 2 F.3d at 1187. It appears that the *Barth* court requires plaintiffs to demonstrate that a proposed accommodation does not put an unreasonable burden on typical employers in a given industry. If, on the other hand, the employer were to argue that a proposed accommodation was unreasonable in light of factors particular to its own operation, the court would treat the argument as a defense based on undue hardship. And then the burden of proof would fall on the employer, in accordance with the regulations. *Id.* at 1186–87.[2]

---

**2.** In *Vande Zande v. Wisconsin Department of Administration,* 44 F.3d 538 (7th Cir.1995), Judge Posner, writing for the Seventh Circuit, attributes to the District of Columbia Circuit the view that undue hardship "permits an employer to escape liability if he can carry the burden of proving that a disability accommodation reasonable for a normal employer would break him." *Id.* at 543 (citing *Barth,* 2 F.3d at 1187). This suggests that an employer could escape liability even if the only reason the accommodation "would break him" is his own inefficiency relative to others in the industry. We do not read the D.C. Circuit as going quite that far in *Barth.* Such a holding would require the Rehabilitation Act to be read, in effect, to subsidize inefficient employers by relieving them of burdens that are imposed on their more efficient competitors.

We are barred by our precedents from adopting the D.C. Circuit's approach. *See Gilbert,* 949 F.2d at 642. In addition, the D.C. Circuit's analysis raises at least two difficulties. First, it may be contrary to the intent of Congress. In passing the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.,* which imposes obligations equivalent to those under Section 504, *see* 29 U.S.C. § 794(d), Congress apparently contemplated that an accommodation that imposed burdens that would be unreasonable for most members of an industry might nevertheless be required of an individual defendant in light of that employer's particular circumstances. *See* H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 3, at 41, *reprinted in* 1990 U.S.C.C.A.N. 267, at 464. Under the D.C. Circuit's approach, however, an accommodation that imposed a burden so significant as to be unreasonable "in the run of cases," *Barth,* 2 F.3d at 1187, would never be required, because the plaintiff would be unable to carry her burden of persuasion on the question of reasonable accommodation, and the issue of whether the accommodation would unduly burden the particular employer would never be reached.

Second, the employer has far greater access to information than the typical plaintiff, both about its own organization and, equally importantly, about the practices and structure of the industry as a whole. *See Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. Unit A Nov. 5, 1981). Requiring a plaintiff not merely to proffer evidence that a proposed accommodation is reasonable, but to bear the risk of nonpersuasion on that issue as well, means that the plaintiff's burden, viewed in the context of all of the other elements that she must also establish to prevail, *see Sedor,* 42 F.3d at 746, is a heavy one indeed.

In contrast to the D.C. Circuit, the Fifth and Ninth Circuits have essentially placed the burden on the issue of reasonable accommodation, as well as on undue hardship, on the employer. The Fifth Circuit has done this by establishing a series of shifting bur-

dens. The employer bears an initial burden of production, pursuant to which it must "present[ ] credible evidence that indicates accommodation of the plaintiff would not reasonably be possible." *Prewitt,* 662 F.2d at 308. Once the employer has done so, the burden of production shifts to the plaintiff, who must "com[e] forward with evidence concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Id.* The burden of persuasion, however, remains always with the employer. *Id.* The Ninth Circuit has adopted the Fifth Circuit's analysis. *See Mantolete v. Bolger,* 767 F.2d 1416, 1423–24 (9th Cir.1985).

Our precedents have rejected the approach taken by the Fifth and Ninth Circuits. *See Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 515 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992); *Gilbert,* 949 F.2d at 642. The approach of these two circuits does not run into direct difficulties with the regulatory language. It does have a consequence, however, that the courts do not discuss and appear not to recognize. In effect, it puts on the employer the burden of demonstrating that the plaintiff is not otherwise qualified for employment. *See Gilbert,* 949 F.2d at 642. A plaintiff is otherwise qualified only if she can perform the essential functions of her job with or without reasonable accommodation. And the Fifth and Ninth Circuits' approach essentially places on the employer both the initial burden of production and the ultimate burden of persuading the factfinder that no reasonable, effective accommodation exists.

■ This court charts a middle course. Under our approach, the plaintiff bears the burden of production and persuasion on the issue of whether she is otherwise qualified for the job in question. *Heilweil,* 32 F.3d at 722; *Teahan,* 951 F.2d at 515; *Doe,* 666 F.2d at 776–77. A plaintiff cannot be considered

The listing of regulatory factors pertinent to the individual employer does not on its face require such an interpretation. But the issue is not before us, and so we need not resolve it at this time.

"otherwise qualified" unless she is able, with or without assistance, to perform the essential functions of the job in question. *Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17; *Gilbert*, 949 F.2d at 641–42. It follows that the plaintiff bears the burden of proving either that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions.

■ Whether a proposed accommodation is *reasonable*, however, is another question. "Reasonable" is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce. This requires an inquiry not only into the benefits of the accommodation but into its costs as well. *See Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir.1995). We would not, for example, require an employer to make a multi-million dollar modification for the benefit of a single individual with a disability, even if the proposed modification would allow that individual to perform the essential functions of a job that she sought. In spite of its effectiveness, the proposed modification would be unreasonable because of its excessive costs. In short, an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce. *Id.* at 542–43; *cf. Barth*, 2 F.3d at 1187 (an accommodation may be unreasonable if its costs are excessive).[3]

■ As to the requirement that an accommodation be reasonable, we have held that the plaintiff bears only a burden of production. *Gilbert*, 949 F.2d at 642. This burden, we have said, is not a heavy one. *Id.* It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant. *Id.*

■ At this point the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship. For in practice meeting the burden of nonpersuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing. *See, e.g., Arline*, 480 U.S. at 287 n. 17, 107 S.Ct. at 1131 n. 17 ("Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires 'a fundamental alteration in the nature of [the] program.'" (citations omitted)); *Gilbert*, 949 F.2d at 642 (equating, through citation to the regulations, the employer's burden of showing that an accommodation is not reasonable with the employer's burden on undue hardship); *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1080 (6th Cir.1988) (stating that an accommodation is not reasonable if it imposes an undue hardship on the employer).

---

**3.** In evaluating the costs and benefits of a proposed accommodation, it must be noted that Section 504 does not require that the *employer* receive a benefit commensurate with the cost of the accommodation. The concept of reasonable accommodation, developed by regulation under Section 504, received the imprimatur of congressional approval with the passage of the Americans With Disabilities Act, 42 U.S.C.A. §§ 12101 *et seq.* (West Supp.1994); *see also* 29 U.S.C.A. § 794(d) (West Supp.1994) (stating, in a 1992 amendment, that Section 504 is to be interpreted consistently with the employment-related provisions of the Americans With Disabilities Act). As set forth by statute and regulation, the concept of reasonable accommodation permits the employer to expect the same level of performance from individuals with disabilities as it expects from the rest of its workforce. *See* H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 55–56, *reprinted in* 1990 U.S.C.C.A.N. at 337–38. But the requirement of reasonable accommodation anticipates that it may cost more to obtain that level of performance from an employee with a disability than it would to obtain the same level of performance from a non-disabled employee. *See id.* And Congress fully expected that the duty of reasonable accommodation would require employers to assume more than a *de minimis* cost. *See id.*, pt. 2, at 68, *reprinted in* 1990 U.S.C.C.A.N. at 350; *id.*, pt. 3, at 40, *reprinted in* 1990 U.S.C.C.A.N. at 463. It follows that an accommodation is not unreasonable simply because it would be more efficient, in the narrow sense of less costly for a given level of performance, to hire a non-disabled employee than a disabled one.

Undue hardship is not a self-explanatory concept, however. As we have already noted, the regulations implementing Section 504 go some distance in giving substance to the bare phrase. They require consideration of:

(1) The overall size of the recipient's program with respect to number of employees, number and type of facilities, and size of budget;

(2) The type of the recipient's operation, including the composition and structure of the recipient's workforce; and

(3) The nature and cost of the accommodation needed.

34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b); *cf.* 42 U.S.C.A. § 12111(10) (defining undue hardship under the Americans With Disabilities Act). But even this list of factors says little about how great a hardship an employer must bear before the hardship becomes undue. Does Section 504 require, for example, that employers be driven to the brink of insolvency before a hardship becomes too great? We think not. *Cf.* Jeffrey O. Cooper, Comment, *Overcoming Barriers to Employment: The Meaning of Reasonable Accommodation and Undue Hardship in the Americans with Disabilities Act,* 139 U.Pa. L.Rev. 1423, 1448 (1991) (noting that, during the debate over the Americans with Disabilities Act, Congress considered and rejected a provision that would have defined an undue hardship as one that threatened the continued existence of the employer). Similarly, where the employer is a government entity, Congress could not have intended the only limit on the employer's duty to make reasonable accommodation to be the full extent of the tax base on which the government entity could draw. *See Vande Zande,* 44 F.3d at 542–43.

■ What, then, does undue hardship mean? We note that "undue" hardship, like "reasonable" accommodation, is a relational term; as such, it looks not merely to the

costs that the employer is asked to assume, but also to the benefits to others that will result. *Id.* at 543. The burden on the employer, then, is to perform a cost/benefit analysis. In a sense, of course, that is what the plaintiff also had to do to meet her burden of making out a *prima facie* case that a reasonable accommodation existed. But while the plaintiff could meet her burden of production by identifying an accommodation that facially achieves a rough proportionality between costs and benefits, an employer seeking to meet its burden of persuasion on reasonable accommodation and undue hardship must undertake a more refined analysis. And it must analyze the hardship sought to be imposed through the lens of the factors listed in the regulations, which include consideration of the industry to which the employer belongs as well as the individual characteristics of the particular defendant-employer. If the employer can carry this burden, it will have shown both that the hardship caused by the proposed accommodation would be undue in light of the enumerated factors, and that the proposed accommodation is unreasonable and need not be made.[4]

■ Despite the ambiguities of the statutory and regulatory language, we believe that the resulting standards should not prove difficult to apply. First, the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified. On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits. These two requirements placed on the plaintiff will permit district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.

---

4. With our approach and those of the D.C., Fifth, and Ninth Circuits, contrast that which the Seventh Circuit appears to adopt in *Vande Zande.* Under that case, the plaintiff is required to do a rough cost/benefit analysis to demonstrate that a reasonable accommodation exists, but the employer may defend by showing that "upon more careful consideration" the accommodation im-

poses an undue hardship. *Vande Zande,* 44 F.3d at 543. *Vande Zande* does not deal expressly with questions of burdens of production and persuasion. It is possible, therefore, that in the Seventh Circuit the burdens of production and of persuasion on the issue of reasonableness—although subject only to a rough cost/benefit analysis—nevertheless rest with the plaintiff.

Second, we do not at all intend to suggest that employers, in attempting to meet their burden of persuasion on the reasonableness of the proposed accommodation and in making out an affirmative defense of undue hardship, must analyze the costs and benefits of proposed accommodations with mathematical precision. District courts will not be required to instruct juries on how to apply complex economic formulae; a common-sense balancing of the costs and benefits in light of the factors listed in the regulations is all that is expected.

### b. *Ms. Borkowski's claim*

With these standards in mind, we proceed to analyze Ms. Borkowski's claim. Ms. Borkowski concedes that her performance was inadequate, and that she was unable to meet the School District's legitimate expectations without help. She maintains, however, that with the provision of a teacher's aide to assist her in maintaining classroom control, she would be able to perform all of the functions of a library teacher, and therefore was otherwise qualified. She further contends that the provision of a teacher's aide is not unreasonable.

### i. *Ms. Borkowski's ability to perform the essential functions of her job*

In evaluating Ms. Borkowski's claim that she could perform all of the essential functions of a tenured library teacher, we encounter a difficulty: it is not immediately apparent what the essential functions of Ms. Borkowski's job were. In denying Ms. Borkowski tenure, the School District focused primarily on Ms. Borkowksi's poor classroom management. But is classroom management—the ability to maintain appropriate behavior among the students—an essential function of a tenured library teacher's job? We might intuitively think so. But Section 504 does not permit us to rely on intuition— indeed, unthinking reliance on intuition about the methods by which jobs are to be performed and how an individual's disabilities relate to those methods is among the barriers that the Rehabilitation Act was designed to overcome. *Cf. Alexander v. Choate,* 469 U.S. 287, 296–97, 105 S.Ct. 712, 717–18, 83 L.Ed.2d 661 (1985) (stating that one of the purposes of the Rehabilitation Act was to overcome the effects of entrenched attitudes of "benign neglect" toward individuals with disabilities). To avoid unfounded reliance on uninformed assumptions, the identification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice. *See Hall,* 857 F.2d at 1079.

Determining what is an essential part of Ms. Borkowski's job and examining in detail the manner in which a teaching aide might assist Ms. Borkowski in maintaining classroom control are of critical importance to this case because those inquiries establish the framework for determining whether Ms. Borkowski has met her burden of showing that she is otherwise qualified. As we noted earlier, an individual who cannot perform the essential functions of a job, either with or without assistance, is not otherwise qualified within the meaning of Section 504. It follows that an employer is not required to accommodate an individual with a disability by eliminating essential functions from the job. *Gilbert,* 949 F.2d at 642; *see also Tuck v. HCA Health Servs., Inc.,* 7 F.3d 465, 472 (6th Cir.1993); *Bradley v. University of Texas M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994). And so we have held, for instance, that individuals whose physical condition precludes them from engaging in heavy lifting, and who seek jobs for which such lifting is shown to be an essential function, need not be accommodated by shifting responsibility for the lifting to other individuals. *Gilbert,* 949 F.2d at 643– 44.

Admittedly, then, having someone else do part of a job may sometimes mean eliminating the essential functions of the job. But at other times providing an assistant to help with a job may be an accommodation that does not remove an essential function of the job from the disabled employee. Thus, for example, a visually impaired administrator or clerk may be provided with a reader. *See Nelson v. Thornburgh,* 567 F.Supp. 369, 382 (E.D.Pa.1983), *aff'd,* 732 F.2d 146 (3d Cir.

1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); 34 C.F.R. § 104.12; 45 C.F.R. § 84.12. What matters to that individual's job is not the ability to read *per se,* but rather the ability to take in, process, and act on information. The provision of a reader in these circumstances does not eliminate an essential function, but rather permits the individual with a disability to perform that essential function.

▮ The accommodation suggested by Ms. Borkowski appears, at first blush, to resemble more closely one that would eliminate an essential function of a library teacher in a classroom setting than one that would permit Ms. Borkowski to perform that function. Yet, viewing the record at this stage of the proceedings in the light most favorable to Ms. Borkowski, we cannot say that no reasonable jury could conclude otherwise. *See Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). This is especially so since the regulations implementing Section 504 explicitly contemplate that teachers with disabilities may require the assistance of teachers' aides. *See* 45 C.F.R. Part 84 Appendix A at 376.

A number of factors might be relevant in the present case. One might be the age of the students that Ms. Borkowski taught. We know that they were elementary school students, but, within that category, children of different ages may require different degrees of supervision. Another would be the availability of teacher's aides within the School District. We know from the record that Ms. Borkowski was provided with an aide to assist her in the performance of her library duties, although not of her teaching duties. But were other teachers within the school system provided with teacher's aides to assist in maintaining appropriate student behavior? If so, then classroom management might not be considered an essential function.

Under the circumstances of this case, three conclusions are possible: either (a) classroom management was an essential function of Ms. Borkowski's job, and Ms. Borkowski's proposed accommodation would eliminate that function; or (b) classroom management was an essential function of Ms. Borkowski's job, but providing Ms. Borkow-

ski with an assistant would permit *her* to perform that function, though with assistance; or (c) classroom management was not an essential function of Ms. Borkowski's job, and it does not matter whether Ms. Borkowski's proposed accommodation would result in her performing the function, albeit with assistance, or in the reassignment of that function to the teacher's aide. Only the first of these conclusions would support a grant of summary judgment in favor of the School District. And we cannot say that such a conclusion is required on the record as it currently exists.

To recapitulate: Showing that an accommodation is available that would allow the plaintiff to perform the essential functions of her job is an element of the plaintiff's case. Therefore, the burden of showing that the essential functions of the job can be performed is also on the plaintiff. But since Section 504 does not allow us to rely on intuition, once the plaintiff has introduced evidence that an accommodation exists that permits her to perform the job at the same level as a non-disabled employee, a fact question has been created. *Gilbert,* 949 F.2d at 642. It is quite possible that, at this point, a defendant can bring in evidence such that a factfinder could decide that the plaintiff could not actually perform the essential functions of the job; it is even possible that the defendant can bring in evidence that establishes as a matter of law that the proposed accommodation does not allow the plaintiff to meet the essential functions of the job. In either case, the burden of persuasion on this issue, the existence of an effective accommodation, remains with the plaintiff.

Ms. Borkowski has introduced evidence that an accommodation—provision of an aide—is available and would allow her to perform the essential functions of a tenured library teacher. Ms. Borkowski therefore has established, as a *prima facie* matter, that an effective accommodation exists. The School District to date has not brought in any evidence that would permit a court to rule as a matter of law that Ms. Borkowski's performance would be inadequate even with the proposed accommodation or that the accommodation would eliminate the essential

functions of the job. Accordingly, an issue of fact remains as to whether Ms. Borkowski's proposed accommodation would render her otherwise qualified.

### ii. *Ms. Borkowski's prima facie showing of reasonableness*

Turning, then, to the reasonableness of Ms. Borkowski's proposed accommodation, we conclude that Ms. Borkowski has met her burden of production. The proposed accommodation plainly falls within the range of accommodations that may, in a general sense, be considered reasonable in light of their costs and benefits. Both the regulations implementing Section 504 and the cases applying the Rehabilitation Act contemplate the possibility that the use of assistants may be reasonable accommodations. *See* 34 C.F.R. § 104.12(b) ("Reasonable accommodation may include: ... (2) ... the provision of readers or interpreters, and other similar actions."); 45 C.F.R. Pt. 84 App. A at 360 (a school district may be required to provide a blind teacher with a sighted teacher's aide); *see also Overton v. Reilly,* 977 F.2d 1190, 1195 (7th Cir.1992) (stating that provision of an assistant to speak on the phone may be a required accommodation for an individual unable to communicate effectively by phone); *Arneson v. Sullivan,* 946 F.2d 90, 93 (8th Cir.1991) (requiring that a reader be provided as an accommodation); *Nelson,* 567 F.Supp. at 379–82 (requiring the hiring of readers as a reasonable accommodation for blind employees).[5] Accordingly, we conclude that Ms. Borkowski has made a showing adequate to carry her burden of production on the reasonableness of her proposed accommodation.

### c. *The School District's claim of undue hardship*

Since Ms. Borkowski has introduced enough evidence to raise a factual issue as to whether, with an accommodation, she is otherwise qualified, and also has made out a *prima facie* case that the proposed accommodation is reasonable, a summary judgment can be entered on this issue only if the School District has demonstrated, as a matter of law, that the accommodation is unreasonable or that it imposes an undue hardship. The School District, however, has thus far presented no evidence concerning the cost of providing a teacher's aide, its budget and organization, or any of the other factors made relevant by the regulations. Instead, the School District argues that the provision of an assistant is unreasonable and creates an undue hardship as a matter of law, regardless of the particular facts of the case. This argument need not long detain us. As was noted above, there is nothing inherently unreasonable or undue in the burden that an employer would assume by providing an assistant to an employee with disabilities; the regulations clearly contemplate, and courts have held, that employers may be required to assume the cost of providing assistants for otherwise qualified individuals with disabilities absent a showing by the employer that the cost is excessive in light of the factors enumerated in the regulations. *See* text accompanying note 4, *supra.* It may be that the School District can show that the benefits that an aide would give are too small in relation to the cost of an aide. It may also be that the District can demonstrate that in this and other districts provision of an aide

**5.** In both *Overton* and *Arneson,* the defendant employers were branches of the federal government, and thus were subject to Section 501 of the Rehabilitation Act as well as the antidiscrimination requirements of Section 504. Section 501 requires federal employers to take affirmative steps (above and beyond reasonable accommodation) to hire individuals with disabilities, an obligation that is not imposed on recipients of federal funds under Section 504. *Compare* 29 U.S.C. § 791 *with* 29 U.S.C. § 794; *see also Carr,* 23 F.3d at 528; *Hall,* 857 F.2d at 1077. Federal employers therefore may be required to do more under Section 501 than recipients of federal funds under Section 504.

The fact that *Overton* and *Arneson* arose under Section 501 as well as Section 504, however, does not mean that provision of an assistant cannot be a reasonable accommodation where the plaintiff sues under Section 504 alone. The regulations implementing Section 504 explicitly contemplate that the provision of an assistant may be required in appropriate circumstances. *See Nelson,* 567 F.Supp. at 370; 34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b)(2). The Americans With Disabilities Act, which imposes obligations equivalent to those imposed by Section 504, *see* 29 U.S.C.A. § 794(d), also states that provision of an assistant may be a reasonable accommodation. 42 U.S.C.A. § 12111(9)(b).

would impact school budgets sufficiently as to be an unreasonable or undue burden. It may even be that the School District can show these so powerfully that a judgment as a matter of law would be appropriate. But in the absence of evidence regarding school district budgets, the cost of providing an aide of this sort, or any like kind of information, we are unable to conclude that unreasonableness or undue hardship has been established, and we certainly cannot say that either has been established as a matter of law.

\* \* \* \* \* \*

Because Ms. Borkowski has raised a fact question on whether with the provision of an aide she would be able to perform the essential functions of a library teacher, and because she has met her burden of production on the issue of whether the provision of such an aide would be a reasonable accommodation, and finally because the School District has not established as an affirmative defense that the provision of such an aide would, as a matter of law, either be unreasonable or impose an undue hardship, a summary judgment on the question of whether Ms. Borkowski is "otherwise qualified" cannot issue on the present record.

**2. Was Ms. Borkowski denied tenure solely because of her disabilities?**

Being otherwise qualified, however, would not in and of itself entitle Ms. Borkowski to relief. Section 504 does not protect employees with disabilities from all adverse employment decisions, but only from discrimination on the basis of disability. Employees with disabilities would not, for example, be insulated from a layoff accompanying an economic downturn, provided that the employer did not select the employees to be discharged in a discriminatory manner. To avoid summary judgment on her Section 504 claim, Ms. Borkowski must, therefore, do more than introduce evidence raising an issue of fact as to whether she was otherwise qualified. She must also introduce evidence sufficient to permit a factfinder to conclude that she was denied tenure solely because of her disabilities. *See, e.g., Sedor,* 42 F.3d at 746.

On this issue, the School District contends that Ms. Borkowski was denied tenure not because of her disabilities, but rather because her performance was inadequate. In support of its argument, the School District relies on the negative evaluations of Ms. Borkowski's performance. The School District also points to the deposition testimony of Mr. Coonan, who stated, "I don't think disability was even a thought in anybody's mind. It certainly was not in mine."

■ The School District's argument misses the point. In denying Ms. Borkowski tenure, the School District relied on its judgment that Ms. Borkowski was unable to maintain appropriate behavior among her students. The School District knew of Ms. Borkowski's disabilities, however, since Ms. Borkowski informed the School District of these, both when she was hired and at the time of the tenure decision. The School District, therefore, had an "affirmative obligation" to make reasonable accommodation to these known disabilities, subject to the limitations described above. *Arline,* 480 U.S. at 289 n. 19, 107 S.Ct. at 1131 n. 19. Failure to consider the possibility of reasonable accommodation for such disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities. Ms. Borkowski introduced evidence, in the form of letters from a physician and a psychologist, suggesting that the inadequacies in her performance were due entirely to her disabilities. Under the circumstances, this evidence was sufficient to establish, as a *prima facie* matter, that she was denied tenure solely because of her disabilities. *See Sedor,* 42 F.3d at 746 (causal relationship between disability and discharge can be demonstrated by showing that disability caused the conduct on which the discharge was based).

■ We therefore conclude that the issue of whether Ms. Borkowski was denied tenure solely because of her disabilities cannot be decided on a motion for summary judgment.

**III.**

■ Ms. Borkowski also claims that the School District's use of unannounced observations unfairly disadvantaged her in view of her difficulty in dealing with multiple stimuli.

Under Section 504, an employer must take care that its evaluative techniques measure the job-related skills of an individual with disabilities and not the disabilities themselves. *See* 34 C.F.R. § 104.13(b); 45 C.F.R. § 84.13(b); *cf.* 42 U.S.C. § 12112(b)(7) (Americans With Disabilities Act). Because we have concluded that there is a genuine issue of fact as to whether the School District reasonably could have accommodated Ms. Borkowski in a way that would permit her to perform the essential functions of a library teacher in a satisfactory manner, and because all of the School District's evaluations of Ms. Borkowski were performed in the absence of such a reasonable accommodation, we need not reach the separate question of whether the School District's use of unannounced observations was itself discriminatory under Section 504. We very much doubt, however, that, as Ms. Borkowski suggests, the School District could adequately perform its legitimate and important function of evaluating its probationary teachers by foregoing unannounced observations and relying on announced observations alone. If the provision of an assistant is a reasonable accommodation under Section 504, then the School District must provide Ms. Borkowski with such an assistant before it evaluates Ms. Borkowski through unannounced observations. But the possible need for, and reasonableness of, the provision of an assistant in no way suggests that the School District must give up its normal method of evaluating a teacher's performance once the accommodation has been provided.

## IV.

On a motion for summary judgment, the moving party bears the burden of demonstrating that no genuine issues of material fact exist. All ambiguities are to be resolved and all reasonable inferences drawn in favor of the nonmoving party. *Gallo*, 22 F.3d at 1223. Viewing the record in light of this standard, we cannot say that no genuine issues of material fact exist with respect to the issues of whether Ms. Borkowski was otherwise qualified for the position of tenured library teacher and whether Ms. Borkowski was denied tenure solely because of her disabilities. Accordingly, we vacate the district court's entry of summary judgment in favor of the School District and remand for further proceedings consistent with this opinion.

JON O. NEWMAN, Chief Judge, concurring:

This appeal exemplifies a recurring set of issues that arise whenever Congress makes very clear its desire to help some group of disadvantaged persons but leaves very unclear how it expects its legislative solution to be implemented in a courtroom. The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Supp. V 1993), which has pertinence to this appeal under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1988 & Supp. V 1993), demonstrates the compassion of Congress for persons with disabilities and its determination to create an enforceable rule of law to oblige employers to go to considerable lengths to make it possible for disabled persons to work productively. Not surprisingly, it is easier to formulate that worthy objective and promulgate the substantive anti-discrimination standard designed to achieve it than to determine the procedural framework for conducting lawsuits brought to redress alleged violations of the new legal standard. Among the difficult courtroom issues to be resolved under statutes like the Rehabilitation Act and the ADA are (a) what are the elements of the plaintiff's cause of action, (b) what must the plaintiff present to satisfy a judge that the case is within the range of reasonable dispute that makes it appropriate for consideration by a jury, (c) if the case reaches the jury, does the plaintiff bear the traditional civil burden of proof by a preponderance of the evidence as to all elements, and (d) what is the nature of any affirmative defense available to the defendant.

In section 504 of the Rehabilitation Act, Congress has told us that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination" under any program or activity receiving federal funding. 29 U.S.C. § 794(a) (Supp. V 1993). That well-intentioned announcement of a

standard tells us very little about the litigation issues that need to be decided. The statute is elliptical even as to the substantive standard, omitting any mention of the phrase "reasonable accommodation," which regulations, *see, e.g.,* 45 C.F.R. § 84.3(k)(1) (1994); 29 C.F.R. § 1613.702(f) (1994); 34 C.F.R. § 104.3(k)(1) (1994), and case law, *see School Board of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979), have come to identify as a key ingredient of the substantive standard relating to whether an individual is "otherwise qualified."

Congress provided some additional guidance in 1990 when it enacted the ADA and specified that the "standards used to determine whether [section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination ... shall be the standards applied" under the ADA. 29 U.S.C. § 794(d) (Supp. V 1993). The ADA amplifies its generalized substantive standard that bars "discriminat[ion] against a qualified individual with a disability because of the disability of such individual," 42 U.S.C. § 12112 (Supp. V, 1993), with four provisions pertinent to this appeal. First, the ADA defines the term "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Second, the ADA specifies that "the term 'discriminate' includes ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* § 12112(b)(5)(A). Third, the ADA contains a definition of "reasonable accommodation." *Id.* § 12111(9). However, this definition explains only the sorts of modifications and assistance that are included within the phrase "reasonable accommodation" and provides no guidance as to whether, or to what extent, the cost of such items are relevant to a determination of their reasonableness. Fourth, the ADA contains a definition of "undue hardship." *Id.* § 12111(10). This definition appears to focus the inquiry as to "undue hardship" both on "the nature and cost of the accommodation" to employers generally, *id.* § 12111(10)(b)(i), and on the circumstances of the particular employer, referring to financial resources "of the facility or facilities involved in the provision of the reasonable accommodation," the number of employees "at such facility," and the impact on the operation "of the facility," *id.* § 12111(10)(b)(ii).

Though these provisions are helpful, they do not provide clear answers to the litigation issues that arise in lawsuits claiming discrimination on the basis of disability. The unanswered issues pertinent to this appeal are: (1) What are the criteria for determining when an "accommodation" is "reasonable"? (2) Is a "reasonable accommodation" any accommodation that does not impose an "undue hardship"? (3) If "reasonable accommodation" has some meaning other than the absence of an "undue hardship," does the plaintiff have to prove as an element of the discrimination claim that a proposed "accommodation" is "reasonable," or does the plaintiff have only a burden of production to identify a "reasonable accommodation"?

Other circuits have given various answers to these questions. The Ninth Circuit appears to equate "reasonable accommodation" with the absence of "undue hardship," viewing these concepts as opposite sides of the same coin. *See Mantolete v. Bolger,* 767 F.2d 1416 (9th Cir.1985). *Mantolete* places on the employer the burden of proving inability to accommodate, and places on the plaintiff only the burden of coming forward "to rebut" the employer's showing that no reasonable accommodation is available. *Id.* at 1423–24. A similar approach appears to be taken by the Fifth Circuit. *See Prewitt v. United States Postal Service,* 662 F.2d 292, 308 (5th Cir. Unit A 1981).

The District of Columbia Circuit takes a very different approach. That Circuit distinguishes between the tests for a "reasonable accommodation" and an "undue hardship." *See Barth v. Gelb,* 2 F.3d 1180 (D.C.Cir.

1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994):

> As a general matter, a reasonable accommodation is one employing a *method of accommodation* that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular agency's operations.

*Id.* at 1187 (emphasis in original). Judge Buckley's opinion in *Barth* considers a "reasonable accommodation" to be an element of the plaintiff's case and appears to place the burden of persuasion on the plaintiff to prove that the proposed accommodation is reasonable "in the run of cases." "The burden, however, remains with the plaintiff to prove his case by a preponderance of the evidence." *Id.* at 1186.[1]

The Seventh Circuit has entered the debate, more aligned with the D.C. Circuit than with the Ninth Circuit. The Seventh Circuit also appears to distinguish the concepts of "reasonable accommodation" and "undue hardship," citing *Barth*, with tentative endorsement, as "one interpretation." *See Vande Zande v. State of Wisconsin Dep't of Administration*, 44 F.3d 538, 543 (7th Cir. 1995). Judge Posner's opinion in *Vande Zande* also appears to place on the plaintiff the burden to prove a "reasonable accommodation." *Id.* at 453 ("The employee must *show* that the accommodation is reasonable....") (emphasis added).

However, Judge Posner, like most of his colleagues, has told us little about how to determine in a courtroom whether an accommodation is "reasonable." He is clear as to what is not "reasonable." Even a wealthy employer, he asserts, "would not be required to expend enormous sums in order to bring about a trivial improvement in the life of a disabled employee." *Id.* at 542–43. That statement presumably means that many dollars need not be spent to make the work environment of a disabled employee slightly more comfortable, but it does not tell us what "reasonable" means where the proposed accommodation is substantial, *i.e.*, enables the employee to perform the essential functions of the job. We gain more insight into Judge Posner's meaning from his further observation that the savings he believes Congress expected from the ADA "will be illusory if employers are required to expend many more billions in accommodation than will be saved by enabling disabled people to work." *Id.* at 543.[2] This observation suggests that an accommodation is not reasonable, even if it would enable many disabled persons to become employed, if the aggregate cost of making it at numerous installations exceeds the costs that would result if these disabled persons were not employed. Presumably this is what Judge Posner means by obliging the plaintiff to show that the proposed accommodation is not only efficacious but also "proportional to costs." *Id.*

In our Circuit, we have steered a course between the lenient approach (from the plaintiff's standpoint) of the Ninth Circuit and the more burdensome approaches of the D.C. and Seventh Circuits. Judge Kearse's opinion in *Gilbert v. Frank*, 949 F.2d 637 (2d Cir.1991), appears to make "reasonable accommodation" and "undue hardship" virtually opposite sides of the same coin:

---

1. Some doubt as to the D.C. Circuit's approach is created by the reference in *Barth* to a "reasonable accommodation (which [the plaintiff] must *describe*)," 2 F.3d at 1186 (emphasis added), a reference that could be understood to mean that the plaintiff bears only a burden of production. The remainder of the opinion, however, appears to impose a burden of persuasion.

2. Judge Posner's premise, that Congress expected net "savings" from the ADA is not beyond dispute. He cites the legislative finding that discrimination against the disabled "costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonpro-

ductivity." 42 U.S.C. § 12101(9) (Supp. V 1993). Though some might take this finding to mean that the ADA will yield net savings (avoided costs of dependency and nonproductivity minus incurred costs of ADA compliance), others might think that Congress was anxious to avoid dependency and nonproductivity among the disabled as a matter of public policy, even if the saved costs were less than the incurred costs of ADA compliance. That thought will be readily entertained by those who expect the costs of dependency and nonproductivity to be borne generally by government and the costs of ADA compliance to be borne generally by employers.

[T]he employer is given the ultimate burden of proof on the issue of reasonable accommodation. *See* 45 C.F.R. § 84.12(a) (employer covered by Act "shall make reasonable accommodation ... unless [it] can demonstrate that the accommodation would impose an undue hardship on the operation of its program")....

*Id.* at 642 (ellipsis and brackets in original). However, though this passage cites the employer's undisputed burden to establish its affirmative defense of "undue hardship" as evidence of the employer's "ultimate burden on the issue of *reasonable accommodation,*" *id.* (emphasis added), Judge Kearse is careful to include some aspect of "reasonable accommodation" within the plaintiff's case. Explicitly rejecting the Ninth Circuit's approach for failure to notice that "the definition of 'otherwise qualified' [a fact to be proved by the plaintiff] includes reference to 'reasonable accommodation,' " *id.*, her opinion places "reasonable accommodation" within the requirements of a plaintiff's *prima facie* case, but does so with a burden that seems essentially a burden of production:

[A] plaintiff must, in order to make out a prima facie case, show that she or he can perform the essential functions of the job in spite of the handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation. We do not view the plaintiff's burden with respect to the latter alternative as a heavy one. We would deem it sufficient on this issue for the plaintiff to present *evidence* as to her or his individual capabilities and *suggestions* for some reasonable assistance or job modification by the employer.

*Id.* (emphasis added). The employee need only "suggest[ ]" an accommodation, but the trial court apparently retains some authority to police the outer limits of the statute by determining that the suggested accommodation is within the range of accommodations that a reasonable trier could find to be reasonable. The previously quoted passage, however, makes clear that once the plaintiff satisfies the *prima facie* case requirement of suggesting a reasonable accommodation, the burden of proving that it is not reasonable is upon the employer.

Against this background, Judge Calabresi's opinion in the pending appeal carefully and helpfully elucidates the plaintiff's burden of persuasion as to various components of a cause of action and the plaintiff's burden of production as to identification of a reasonable accommodation. I concur fully in his opinion. In discussing the plaintiff's burden of production as to identification of a reasonable accommodation and the defendant's burden of persuasion that the identified accommodation is not reasonable, Judge Calabresi has indicated the pertinence of a cost/benefit analysis as a theoretical framework, but wisely spared district judges and juries any need to become enmeshed in the intricacies of such analysis. In cases alleging discrimination on the basis of disability, trial judges have to determine, as in all cases claimed to a jury, whether a particular plaintiff's case reaches a jury. In practice, I suspect that this task will turn out to have less to do with even a superficial cost/benefit analysis and will be influenced more by the trial judge's common-sense conclusion that a plaintiff's suggested accommodation is sufficiently reasonable to get the case to the jury, so long as it does not appear to be absurdly expensive. Surely, the trial judge need not accept Judge Posner's invitation to try to quantify the aggregate benefit (cost saving) of installing the accommodation for all similarly situated disabled persons and weighing that benefit against the aggregate cost of the accommodation throughout the affected industry. A trial judge must decide rather quickly whether to send a case to a jury without pausing to conduct a graduate seminar in efficient-market economics. The pertinent guidance remains Judge Kearse's point that the plaintiff's burden is "not ... a heavy one" and that, as to a "reasonable accommodation," the burden is satisfied by *suggesting* "some reasonable assistance or job modification."

Were the matter open in this Circuit, I must admit that I would align myself with Judge Buckley's opinion in *Barth* and conclude that the plaintiff bears the burden of persuasion that the proposed accommodation is reasonable for typical employers in the field, leaving the employer with the opportunity, by way of affirmative defense, to show that the proposed accommodation imposes an

undue burden in view of that employer's particular circumstances. That approach strikes me as a fair way to resolve a quandary that Congress has left for us.

I acknowledge, however, that there are intimations in the legislative history suggesting that some in Congress may have viewed "reasonable accommodation" and "undue hardship" as opposite sides of the same coin. Though the statutory terms seem to be quite different, it is noteworthy that the passage in the House Report on the ADA that purports to explain "reasonable accommodation" ends up discussing the employer's burden of proving undue hardship. *See* H.R.Rep. No. 485(III), 101st Cong., 2d Sess. 39–42 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 462–65. It is also relevant that the statutory definition of "undue hardship" permits the employer to sustain its burden, with respect to its affirmative defense, with evidence as to the hardship for both employers generally and the particular employer being sued.

When Congress fails to make clear what procedural framework it wishes courts to follow in applying its substantive standards, there should be no surprise that different circuits embark on different procedural courses. The resulting uncertainty and confusion are unfortunate, but they will exist until these matters are given uniform answers either by the Supreme Court or by subsequent legislation. In this Circuit, we are endeavoring to chart a sensible procedural course, as our decisions from *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981), to *Gilbert* demonstrate. Judge Calabresi's opinion in the pending appeal is a helpful contribution to that effort, and I concur in it.