Carolyn M. KENNEDY,
Plaintiff–Appellant,

v.

DRESSER RAND CO., Defendant–Appellee.

No. 98–9629.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 13, 1999.

Decided: Sept. 22, 1999.

Luciano L. Lama, Ithaca, NY, for Plaintiff–Appellant.

Eugene D. Ulterino, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY (Stanley J. Matusz, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, CALABRESI and SACK, Circuit Judges.

PER CURIAM.

Plaintiff–appellant Carolyn M. Kennedy appeals from an order of the district court for the Western District of New York (Siragusa, *J.*), granting the motion of defendant-appellee Dresser Rand Co. ("Dresser") for summary judgment. Kennedy brought her claims under the ADA and Rehabilitation Act, alleging that she suffered from "depression" and that her supervisor at Dresser, Dennis Emo, was the "trigger and stressor to her depression." In order to establish a prima

facie case under the ADA and Rehabilitation Act, a plaintiff must show that, "with reasonable accommodation," she could perform the essential functions of the job. *See Stone v. City of Mount Vernon,* 118 F.3d 92, 96–97 (2d Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). Prior to leaving Dresser, Kennedy requested that "she no longer work for, report to, associate with, or be influenced by her assigned supervisor ... and that Dresser Rand Company eliminate any personal contact between plaintiff and [her supervisor]." The only issue we consider in this case is whether Kennedy's requested accommodation was a reasonable one. We conclude that it was not.

## I. BACKGROUND

The following facts are uncontested by the parties. In 1978, Kennedy began working at Dresser as a part-time nurse. In 1979, she became a full-time nurse, and between 1979 and 1995, Kennedy worked for Dresser and was supervised, either directly or indirectly, by Dennis Emo, who oversaw all of Dresser's health care personnel. In 1992, Kennedy was assigned responsibility for Dresser's workers' compensation claims. This job required her to work closely with Emo, who was considered to be the "workers compensation expert at the plant."

Between 1985 and 1995, Kennedy became convinced that she was being harassed by Emo. This harassment took the form of critical evaluations and criticism of Kennedy's attitude. Kennedy also alleges that Emo "taunted me, sneered at me, [and] spoke to me in sarcastic and insulting tones constantly." On December 20, 1995, Kennedy notified Dresser that she had been diagnosed with depression. The letter stated that her depression resulted from "continuous, unrelenting mistreatment and unnecessary harassment" by Emo. Moreover, it demanded that Kennedy "be relieved from reporting to, associating with, or otherwise being subjected to

the antics of Mr. Emo." The letter mentions "additional accommodations" that "may be required," but there is no evidence of any other requests for accommodation by Kennedy or of any modification of her request that she be relieved of any contact with Emo.

When Dresser failed to meet Kennedy's demand for accommodation, she left work and ultimately brought this action. After the close of discovery, Dresser moved for summary judgment. The district court granted Dresser's motion, concluding that "[b]ecause the plaintiff has failed to demonstrate that her requested accommodation is reasonable, she has failed to establish a prima facie case" of discrimination. Arguing that the accommodation she requested was reasonable, Kennedy appeals the district court's grant of summary judgment.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*, drawing all reasonable factual inferences in favor of the nonmoving party. *See McPherson v. Coombe*, 174 F.3d 276, 279–80 (2d Cir. 1999). Summary judgment is only appropriate "if, viewing all evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact." *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995).

■ In order to establish a prima facie case under the ADA or the Rehabilitation Act, the plaintiff "must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir.1995). "On the issue of reasonable accommodation, the plaintiff bears only the

burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* This burden is not a heavy one. *See id.* Moreover, the question of whether a proposed accommodation is reasonable is "fact-specific" and must be evaluated on "a case-by-case basis." *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 385 (2d Cir.1996). Nevertheless, district courts may properly grant summary judgment when a plaintiff fails to meet even this light burden. *See id.; Borkowski*, 63 F.3d at 139.

■ In rejecting Kennedy's proposed accommodation, the district court—after assuming *arguendo* that Kennedy's disability qualified her under the ADA and Rehabilitation Act [1]—cited *Wernick*, 91 F.3d at 384, and stated flatly that "the replacement of a supervisor is not a plausible accommodation." In so doing, the court appeared to read *Wernick* as establishing a per se rule that the replacement of a supervisor cannot be a reasonable accommodation. The Seventh Circuit, in an ADA case, has apparently adopted such a per se rule against the reasonableness of requests for transfer to a different supervisor. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir.1996) ("The ADA does not require HFC to transfer Weiler to work for a supervisor other that Skorupka, or to transfer Skorupka.").

As *Wernick* clearly states, however, in this Circuit, the question of whether a requested accommodation is a reasonable one must be evaluated on a case-by-case basis. *See* 91 F.3d at 385. A per se rule stating that the replacement of a supervisor can never be a reasonable accommodation is therefore inconsistent with our ADA case law. There is a presumption,

---

1. That she qualifies under the statutes, however, are by no means clear. In order to demonstrate that she qualifies as disabled under the ADA and Rehabilitation Act, a person must show that (1) she has a physical or mental impairment and (2) that such impairment substantially limits one or more of her

major life activities. *See Wernick*, 91 F.3d at 383. Moreover, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994).

however, that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of the plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff. *Cf. Borkowski,* 63 F.3d at 139 (stating, even in the absence of a formal presumption, that "the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified").

In this case, Kennedy has not met her burden of identifying an accommodation "the costs of which, facially, do not clearly exceed its benefits." *Id.* First, Kennedy has presented none of the types of facts that would suggest that in her particular workplace, a change of supervisors could be accomplished without excessive organizational costs.[2] Second, Kennedy's request was not simply for reassignment to a different supervisor but also for protection from *any* interaction with Emo. In the context of the particular workplace described in the record before us, it would be virtually impossible for Kennedy to perform her job of coordinating workers' compensation claims without at least some contact with Emo, who supervises all health care personnel and who is the plant "expert" on workers' compensation. Because,

on the facts of this case, Kennedy has not met her burden of identifying a reasonable accommodation, the district court did not err in granting Dresser's motion for summary judgment.

\* \* \*

The judgment of the district court is affirmed.

---

**2.** Kennedy points to several facts that she argues demonstrate that the requested accommodation would not be excessively costly. First, she cites a 1995 report written by outside consultants suggesting that Kennedy's position be reorganized such that she would report directly to the "Human Resource manager." Second, she notes that when asked at his deposition whether Kennedy's reassignment was possible, the president of Dresser stated answered that "[a]nything's possible." The report recommendations concerning Kennedy's job, however, were rejected by the company before this litigation ever began. The reason given for that rejection was that, because Emo was the plant expert on workers'. compensation, it was necessary for the employee in charge of workers' compensation claims to report directly to him. We are loathe to tell a company how to structure its workforce. *See Wernick,* 91 F.3d at 384 ("[N]othing in the law leads us to conclude

that in enacting the disability acts, Congress intended to interfere with the personnel decisions within an organizational hierarchy."). Even if we were to find that the consultants' report raised a genuine issue of fact as to the costs associated with reassigning Kennedy to a different supervisor, neither the report (nor the company president's statement) could plausibly be construed as evidence of the reasonableness of Kennedy's demand to have no contact whatsoever with Emo.

Similarly, Kennedy argues that an email by Emo listing a series of options for Kennedy's reassignment demonstrates that her request was reasonable. The options listed in Emo's email, however, would either have required Kennedy to move to a completely different job—something she has not requested—or would still have entailed substantial interactions with Emo—thus failing to satisfy her request of no contact with her former supervisor.