Walter D. MOORE, Jr., Plaintiff,

v.

TIME WARNER GRC 9, Defendant.

No. 96–CV–6206L.

United States District Court,
W.D. New York.

Aug. 18, 1998.

Walter D. Moore, Jr., Rochester, NY, pro
se.

Paul J. Yesawich, III, Harris, Beach &
Wilcox, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is a discrimination case. Plaintiff Walter Moore ("Moore") asserts that defendant Time–Warner, GRC 9 ("Time–Warner") terminated his employment because of his disability, race, and gender, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Presently before me is Time–Warner's motion for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

Moore is an African–American male who claims to be suffering from diabetes and high blood pressure. He was hired by Time–Warner in February 1995 as a Home Terminal Orientation Representative. Aff't of Ann Burr (December 15, 1997) at ¶ 2. As with all new Time–Warner employees, Moore was on probationary status for a period of ninety days. *Id.* During his first weeks of employment, Moore was required to undergo training to obtain the skills necessary for his new job, *i.e.,* installing home terminals, demonstrating available features and services to customers, and recovering existing cable equipment from subscribers. *Id.* Moore was one of eleven new employees who began training under the supervision of Delores Banks, a manager of Human Resource Development. Moore was the only African–American male in the class. There was one African–American female and Banks herself is an African–American female. *Id.*

During the first week of training Moore was absent for two days. Moore claims that he was sick with the flu and hyperglycemic reactions due to his diabetic condition, and that he called Delores Banks and Dave Barbero, one of the trainers, as well as Phil Smith, a manager, to report his condition and his concerns about being absent. Moore Responding Papers at Ex. 1.

Moore claims that he missed additional training time as the result of a visit to the emergency room on March 6th. *Id.* Emergency room records from this visit indicate that he was suffering from "hyperglycemia, high blood pressure, and constipation." Moore Responding Papers at Ex. 2. Moore claims to have informed Banks and Barbero of his circumstances, and that Banks assured him that she would pass along the information to Phil Smith.

Two separate make-up sessions were scheduled so that Moore could recover the lost training time. These one-on-one classes were scheduled for 6:30 and 7:00 a.m., but Moore failed to attend either and, according to Time–Warner, provided no excuse for those absences. Burr Aff't at ¶ 7. Moore maintains that he missed the make-ups due to inclement weather and car trouble. Moore Responding Papers at Ex. 1. Daily newspaper weather forecasts indicate that on one day, snow showers were likely with a high of 25 degrees, and that the other day called for a mix of snow, sleet and freezing rain and a high of 40 degrees. Moore Responding Papers at Ex. 4.

On or around March 9th, Phil Smith spoke with Moore about the missed appointments and reminded him that meeting scheduled appointments was paramount to the position of Home Terminal Distributor because "our customers do expect us to be on time." Burr Aff't at Ex. D. (Memo from P. Smith dated June 13, 1995). Moore allegedly offered no explanation. *Id.* On that same day, Smith observed Moore in a training session and found that he was "very rambling and unfocused with his questions and his comments." *Id.* Other members of Moore's training group allegedly told Smith that Moore was falling behind in training and that some of them were working with Moore at lunch breaks to bring him up to speed with the rest of the group. *Id.*

Also on March 9th, Smith claims to have received from Banks a written evaluation of Moore's training progress. The evaluation evidently included a recommendation that Moore be terminated due to his lack of concentration during training. *Id.*

Finally, Smith spoke with another trainer, Nessa Wallace, about Moore's training progress. Wallace allegedly reported to Smith that she was concerned about Moore because

of his "wandering conversations and lack of concentration." *Id.*

Based upon what Smith learned about Moore from his own observations and from others, he decided that Moore was not going to be able to "perform effectively with customer contact sales presentations" and that Moore should be terminated. *Id.*

The following Monday, Smith told Moore that his employment was terminated because of his "inability to concentrate on the information being presented as part of the training." [1] *Id.* According to Moore, Smith also told him that he did not have the technical skills to perform the job and that he (Smith) was unaware of Moore's diabetes and hypertension. Moore Responding Papers at Ex. 1. Moore told Smith that he believed he was being discriminated against based upon his race. *Id.* Indeed, Moore claims that throughout his time in the training program racial animosity was pervasive toward both Delores Banks (who apparently had accused someone in the class of stealing some money) and himself. *Id.*

Moore filed an administrative charge with the EEOC describing disability and race discrimination on November 8, 1995, and received a Right to Sue letter dated January 31, 1996. This suit was filed on April 29, 1996.

## DISCUSSION

Time–Warner now moves for summary judgment. Time–Warner asserts that Moore's complaint should be dismissed in its entirety because Moore cannot show even a *prima facie* case of disability discrimination under the ADA, and that there is no evidence whatsoever of race or gender discrimination as prohibited by Title VII.

## A. Summary Judgment Standards:

Pursuant to Fed.R.Civ.P. 56(c), a moving party is entitled to a judgment as a matter of law if there is "no genuine issue as to any material fact" and where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden is on the moving party to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita, supra*, at 586, 106 S.Ct. 1348. "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) (alteration in original)). For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id., cited in, Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996).

## B. The Americans with Disabilities Act

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination under the ADA a plaintiff must show (1) that he is disabled; (2) that he was otherwise qualified to perform his job; and (3) that he was discharged because of his disability. *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996). I find that Moore has failed to establish a *prima facie* case of disability discrimination because he is unable to satisfy any one of these three criteria.

### (i) Moore is not "disabled"

An individual is disabled within the meaning of the ADA if he or she suffers from a

---

1. It is unclear whether Moore was terminated on March 13, 1995 or March 20, 1995. However, I find this discrepancy to be immaterial.

"physical or mental impairment that substantially limits one or more of the major life activities of such individual" 29 C.F.R. § 1630.2(g)(1).[2] Working is a major life activity. *Id.* at § 1630.2(i).

There is no evidence in this case that Moore's diabetes or hypertension substantially limited any major life activity, including Moore's ability to work. Moore does not allege that he was limited in his ability to care for himself, perform manual tasks, walk, see, hear, speak, breathe, learn or work. See 29 C.F.R. § 1630.2(i). Indeed, the evidence is to the contrary. A handwritten note from Moore's physician, dated March 20, 1995, states that Moore "carries the diagnosis of hypertension and diabetes mellitus," but that "[h]e is not disabled from his work because of either of these conditions." Burr Aff't at Ex. N.

Moore himself maintains that he was able to perform at his new job and that he has been successful in other jobs, before and after. Evidence submitted by Moore supports this contention. Two letters of recommendation (one undated, one dated October 7, 1996) state that Moore was/is an excellent employee—"very punctual, extremely customer oriented ... very reliable" and a "hard worker" ... who has "no difficulty working without supervision ..." *Moore Responding Papers* at Ex. 3. Moore further submits proof of satisfactory employment, in electronic equipment sales, during 1997.

In short, there simply is no evidence to suggest that Moore's medical conditions substantially limited any major life activity, including his ability to work, in February and March 1995. Thus, I find that Moore has

failed to demonstrate that he is "disabled" within the meaning of the ADA.[3]

### (ii) Moore is not "otherwise qualified"

To determine whether Moore was "otherwise qualified" I must determine whether he could perform the essential functions of his job despite his handicap and, if not, whether Time–Warner reasonably could have accommodated him so that he could perform the essential functions despite his handicap. *See Adams v. Roch. Gen. Hosp.,* 977 F.Supp. 226, 233 (W.D.N.Y.1997).

In this case, Time–Warner claims that Moore was incapable of performing the skills required for the job, including being present at required training sessions. Time–Warner's assertion is supported by memoranda from two managers who directly observed Moore. Delores Banks observed Moore repeatedly during his training sessions and concluded that "he had a very hard time focusing on the different subjects. His questions and his presentations were not clear and he had trouble concentrating. He was unable to understand how to hook up a VCR, the home terminal, television sets, and other equipment." Burr Aff't at Ex. F (Memo from D. Banks dated June 13, 1995). Smith too observed Moore on one occasion and found that he was "very rambling and unfocused with his questions and his comments." Burr Aff't at Ex. D. Others, *i.e.,* Nessa Wallace and the other new trainees, told Smith that Moore was not performing well. *See* Burr Aff't at Ex. D.[4]

■ Moore claims that he *was* capable of performing the job requirements. He cites his ability to install cable TV in his own

---

**2.** A person also may be "disabled" if he has a record of such an impairment or is regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)–(C); 29 C.F.R. § 1630.2(g). Whichever definition one uses, however, the requirement that the impairment "substantially limit" a major life activity is applicable to all.

**3.** I am aware that some courts have found insulin-dependent diabetes to be a *per se* disability under the ADA. *See, e.g., Arnold v. United Parcel Service, Inc.,* 136 F.3d 854 (1st Cir.1998). However, non-insulin dependent diabetes qualifies only if it meets the criteria stated above. *See, e.g., Schaefer v. State Insurance Fund,* 1998 WL

126061 (S.D.N.Y.1998). In this case, Moore does not allege that he suffers from insulin-dependent diabetes and, as noted, the evidence demonstrates that Moore suffers no limitation of any major life activity, including work.

**4.** While the alleged statements of Wallace and the other trainees appear to be hearsay, and thus inadmissible to show that they were true, such statements likely would be admissible for the purpose of showing their impact on Smith, *i.e.,* that Smith, who made the decision to terminate Moore, was not motivated by unlawful discrimination.

home, as well as his experience and apparent success as an electronics salesman. Moore Responding Papers at Exs. 1, 3 and 5; Complaint at p. 4. Neither allegation, however, demonstrates that Moore had satisfied the standards required by Time–Warner. Because he was terminated after just three (or four) weeks of probationary employment, Moore had no history of satisfactory job performance—no satisfactory performance appraisals, no record of successful home installations, no satisfied customers. In short, Moore has no record of adequate performance at Time–Warner. That Moore is or has been a good electronics salesman does not necessarily mean that he is a qualified Home Terminal Orientation Representative. Even Moore's ability to install his own cable TV, while relevant to the job at least in part, does not prove that he adequately could perform all job requirements. It is Moore's burden to prove that he could perform the essential elements of his job. *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir.1995). This he has failed to do.

■ Moreover, Moore does not deny that he missed several important training sessions, including two that were arranged especially for him. The ADA does not require an employer to accommodate an employee who cannot get to work. Moore's inability to get to these important training sessions made him unqualified to perform the essential functions of the job. *See Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 798 (W.D.N.Y.1996); *see also Misek–Falkoff v. IBM Corp.* 854 F.Supp. 215 (S.D.N.Y.1994) ("Some degree of regular, predictable attendance is fundamental to most jobs"), *aff'd*, 60 F.3d 811 (2d Cir.), *cert. denied*, 516 U.S. 991, 116 S.Ct. 522, 133 L.Ed.2d 429 (1995) and 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996).

Additionally, Moore does not allege that he was prevented from attending these make-up sessions due to his disability. Rather he asserts that "weather conditions, traffic delays and car trouble impacted my ability to get to the sessions on time." Moore Responding Papers at p. 2. Because his inability to get to the training sessions was the result of matters other than his alleged disability,

this further suggests that Moore was not "otherwise qualified" to perform his job.

■ Moore also asserts that he was confused during the training, and had to go to the bathroom frequently, as the result of his diabetes. Moore Responding Papers (Argument) at ¶ 3 and at Ex. 1 at ¶¶ 9, 16. He notes as well that his condition now is better controlled with insulin and that he is more focused and aware of the illness's effects on him. *Id.* at Ex. 1. To the extent Moore is suggesting that he could have performed his job if given reasonable accommodation, he has failed to demonstrate that he informed Time–Warner of his alleged disability and suggested a reasonable accommodation. "It is an employee's burden to inform his employer not only of his alleged disability but also about his need for assistance and to suggest a reasonable accommodation." *Adams*, 977 F.Supp. at 235 (citing *Borkowski*, 63 F.3d at 139–141). "[A]n employer [is not] expected to accommodate disabilities of which it is unaware" ... and "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. app. § 1630.9. (1994). Thus, while Moore may have called to report his absences, there is no evidence whatsoever that Moore informed Time–Warner that he suffered a covered disability and/or that he requested an accommodation of any kind. This he must do *before* the challenged job action is take—not after.

### (iii) Moore was Not Discharged Because of a Disability

For the same reasons, Moore has failed to demonstrate that he was discharged because of his disability. Time–Warner asserts that its decision to terminate was based entirely upon Moore's inability to do the required work. Indeed, Time–Warner asserts that it was unaware that Moore suffered an alleged disability, and without such knowledge, it could not possibly be found to have discharged Moore because of it.

Moore asserts that Time–Warner was aware of his diabetes because of a pre-employment drug test. Moore also cites his telephone calls to Banks on the occasion of

each absence as proof that Time–Warner was aware of his alleged disability.

This information is insufficient to raise an inference that Time–Warner was aware of Moore's alleged disability, let alone acted on this information. Mere knowledge that Moore suffered from diabetes or hypertension is not equivalent to knowing that his condition "disabled" him within the meaning of the ADA. *See Kolivas v. Credit Agricole,* 1996 WL 684167, *5 (S.D.N.Y.1996) (where the court found that knowledge of the plaintiff's prescribed depression and need for time off was not sufficient to demonstrate that the employer knew he was "disabled" within the meaning of the ADA), *aff'd,* 125 F.3d 844 (2d Cir.1997); *Miller v. Nat'l Cas. Co.,* 61 F.3d 627, 629–30 (8th Cir.1995) (employer lacked knowledge of alleged "disability" despite report that employee was suffering from 'situational stress reaction' and the employee's families' entreaty that she was 'failing apart'); *Lewis v. Zilog,* 908 F.Supp. 931 (N.D.Ga.1995) ("that.. [defendant] knew that the plaintiff had some type of stress-related medical condition ... [was] alone not sufficient to give notice of a covered disability for purposes of an ADA claim."), *aff'd,* 87 F.3d 1331 (11th Cir.1996); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931–34 (7th Cir.1995) (employer must have knowledge of disability in order to impose liability under ADA).

Hypertension and diabetes may, but do not necessarily, constitute a disability as defined by the ADA. Moore did not provide Time–Warner with information sufficient for Time–Warner to ascertain that Moore was suffering a covered disability. Without such information, Time–Warner cannot be found to have terminated Moore because of his disability.

In sum, Moore has failed to satisfy any of the three criteria required to establish a *prima facie* case. For all these reasons (or any one of them), his ADA claim is dismissed.

## C. Title VII

■ Moore also asserts that he was terminated because of his race and sex, in violation of Title VII. Time–Warner moves to dismiss these claims on the grounds that there is no evidence whatsoever that Time–Warner was motivated by unlawful race or sex discrimination when it terminated Moore.

■ Title VII provides that it "shall be an unlawful employment practice for an employer to ... discharge any individual, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie case of wrongful termination under Title VII, Moore must show that: (1) he is a member of the protected category; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of race or sex discrimination. *See Viola v. Philips Med. Systems,* 42 F.3d 712, 716 (2d Cir.1994) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Moore has failed to establish a *prima facie* case of either race or sex discrimination. For the reasons set forth in my discussion of Moore's ADA claim, Moore has failed to demonstrate that he was qualified for the position of Home Terminal Orientation Representative. His conclusory allegations of satisfactory performance, in the absence of any compelling supporting evidence, do not satisfy his burden to show that he was qualified.

Nor is there any evidence suggesting that his termination occurred under circumstances giving rise to an inference of either race or sex discrimination. There is no evidence that Moore was replaced by a non-African–American (indeed there is no evidence that Moore was replaced at all). There is no evidence that other African–American employees, during any time period, were terminated at a rate higher than non–African–Americans. There is no evidence that Banks, Smith, or anyone else at Time–Warner was motivated by racial bias. Indeed, the fact that Delores Banks, possibly Moore's strongest critic and the person who initiated his termination, is African–American, is wholly inconsistent with Moore's theory that the termination decision was motivated by race.

As for gender discrimination, the case is even weaker. Of the eleven trainees who began their employment with Moore, eight were male. Only Moore was terminated. There is no evidence that Moore was replaced by a female. The person who had the authority to terminate, and made the decision to do so was Phil Smith—a male. There is no evidence whatsoever that anyone at Time–Warner—Smith, Banks, Barbero, or Wallace—was motivated by anti-male bias. There is no evidence of males being treated differently or unfairly. In short, except for Moore's conclusory allegation, there is no evidence whatsoever suggesting that Moore's termination was motivated by anti-male sentiment.[5]

For these reasons, I find that Moore has failed to satisfy the standards for a *prima facie* case of race or sex discrimination under Title VII. This claim too is dismissed.

On a final note, the Court is aware that Moore is acting *pro se* in the matter, and has approached Moore's submissions with the appropriate deference and liberal interpretation required under Second Circuit law. However, and notwithstanding this liberal treatment, the case must be dismissed. This is not a situation where the facts, if properly assembled and articulated, might support the claims. The facts as set forth by Moore himself, in all of his submissions, simply do not add up to a viable cause of action, no matter how they are assembled. Regrettably for Moore, despite his anger and frustration with being terminated after such a short time period, there simply is no evidence that Time–Warner acted unlawfully.

### CONCLUSION

For all the above reasons, Time–Warner's motion for summary judgment is GRANT-ED. Plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

---

**5.** Moore's sex discrimination claim should be dismissed for yet another reason. In his EEOC charge, Moore describes only alleged race and disability discrimination. The descriptive portion of the charge is silent as to alleged sex discrimination. While it is true that Moore checked off the box labeled "sex", along with the boxes labeled "race" and "disability", merely checking off this box without any factual description of the alleged discrimination does not establish the predicate for a subsequent sex dis-crimination claim in federal court. "Were it otherwise, plaintiffs could circumvent the 'reasonably related' rule altogether by simply checking every box on their EEOC form, even if they alleged no facts to support their claims." *See McKinney v. Eastman Kodak Co.*, 975, F.Supp. 462, 466 (W.D.N.Y.1997). "This would defeat the investigatory and mediation goals underlying Title VII." *Cooper v.. Xerox*, 994 F.Supp. 429, 436 (W.D.N.Y.1998).