Richard SEDOR, Plaintiff–Appellant,

v.

Anthony M. FRANK, Postmaster General, and Postal Service, Defendants–Appellees.

No. 498, Docket 93–6063.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1994.

Decided Dec. 12, 1994.

742

Heidi E. Lichthardt, New York City (Arthur S. Linker, Rosenman & Colin, on the brief), for plaintiff-appellant.

Carl J. Schuman, Asst. U.S. Atty., Hartford, CT (Christopher F. Droney, U.S. Atty. for the D. Conn., New Haven, CT, on the brief), for defendants-appellees.

Before: OAKES, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Richard Sedor appeals from a final judgment of the United States District Court for the District of Connecticut, Joan Glazer Margolis, *Magistrate Judge,* dismissing his suit against defendants Anthony M. Frank, as Postmaster General, and the United States Postal Service (collectively the "Postal Service" or "Service") alleging the termination of Sedor's employment in violation of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 701 *et seq.* (1988 & Supp. V 1994) (the "Rehabilitation Act" or "Act"). Following a bench trial held before the magistrate judge on consent of the parties, *see* 28 U.S.C. § 636(c)(1) (1988), the magistrate judge

found that Sedor had not proven his claim (1) because he was not "otherwise qualified" for the position in which he had been employed, and (2) because he was not discharged solely by reason of his disability but rather was discharged at least in part on account of his extended and undocumented absence from work. Sedor challenges these findings on appeal. We affirm the judgment on the ground that Sedor did not show that his employment was terminated solely by reason of his disability.

## I. BACKGROUND

Sedor, who has a learning disability, was hired by the Postal Service in Hartford, Connecticut, in 1982. He was discharged in 1988 and, after pursuing administrative remedies, commenced the present suit under the Rehabilitation Act. Some of the facts were stipulated prior to trial, and the magistrate judge's findings as to the events underlying this action, as contrasted with the inferences to be drawn from them, are not challenged on this appeal. The events were as follows.

Since his childhood, Sedor has had great difficulty understanding written information. It is preferable that he be given information through oral instructions, and, if he is to comprehend, the information must be broken into small bits, presented in a step-by-step fashion, and repeated. In spite of this challenge, Sedor earned a high school diploma by taking adult education courses for seven years while working at a variety of jobs.

The Postal Service hired Sedor in 1982 as part of a program for the employment of persons having severe handicaps. After satisfactorily completing a six-month probationary period, Sedor was made a "career" employee. During the probationary period and thereafter, the Service made various accommodations for his disability. He was assigned to the day shift, which had significantly fewer employees than the evening and night shifts and was less stressful because it dealt with only third-class and non-preferential mail. Instructions in the initial orientation program, including explanation of the Service's sick-leave policy, and most work instructions were given to him orally. Several individuals, including Kenneth Pennington,

the supervisor who eventually dismissed Sedor, helped to clarify instructions for Sedor and assisted him in other ways. For example, Pennington put up signs identifying towns by the first three digits of their zip codes in order to make it easier for Sedor to understand. The Connecticut Division of Vocational Rehabilitation also provided Sedor with a "job coach."

Nonetheless, Sedor's employment was beset with problems. Some stemmed from insensitivity on the part of fellow employees whose conduct "barely reached tolerable maturity levels for junior high school students." Magistrate Judge's Memorandum of Decision dated February 10, 1993 ("Decision") at 21. Other problems were due to Sedor's own behavior and attitude. The magistrate judge found, for example, that Sedor had undermined the job-coach program by approaching it with the resentment of one having a victim mentality and the view that he was entitled to special privileges. *Id.* at 21–22; *see also id.* at 15 n. 13 (psychologist who had treated Sedor for some eight years described him as "ha[ving] serious psychological problems that have resulted in various difficulties over the years—depression, paranoia, alcohol abuse, interpersonal difficulties, and a rigid concrete sense of being a victim and hence entitled to all types of special privilege."). Sedor complained frequently about his job assignments and had poor interpersonal skills. His "'game'" plan was to "'bug people long enough [so] they'll give me my way.'" (Trial Transcript ("Tr.") Dec. 12, 1991, at 160, 161–62 (testimony of Spiro Makris, representative of Connecticut Division of Vocational Rehabilitation, quoting Sedor)). The Postal Service solved some of the frictions between Sedor and his coworkers by moving him to new positions. Eventually, however, the Service "'didn't have any other place to use him.'" Decision at 10 (quoting testimony of Pennington).

Throughout his employment with the Postal Service, Sedor also had numerous attendance-related difficulties. Pennington had "'regular'" and "'frequent[]'" oral discussions with him about his absences and about the Service's requirements for the documentation of absences. *id.* at 25 (quoting testi-

mony of Pennington). On at least one prior occasion, Sedor's failure to provide documentation had caused him to be disciplined. *Id.* at 10, n. 9.

In November 1987, Sedor was involved in an automobile accident and was briefly hospitalized. He testified that he was disoriented and that he therefore took approved medical leave until mid-January 1988. *Id.* at 25. Sedor returned in January, but on February 3 he failed to appear for work as assigned. Sedor testified that he had advised Pennington of a court appearance scheduled for February 3; that he spoke to Pennington on that day and on February 4; and that in the latter conversation he told Pennington he was not physically or mentally well enough to return to work, and Pennington told him to call in "like every two weeks" (Tr. Dec. 9, 1991, at 105) and to bring his documentation when he "g[o]t [his] act together" (*id.* at 104). Pennington testified that no such conversations had occurred and that Sedor had given no explanation for these absences. Thus, on February 3 and again on February 5 (Sedor was not scheduled to work on February 4), Pennington prepared forms indicating that he had not been notified of the reasons for Sedor's absences and giving Sedor seven days to provide explanations. According to Pennington's testimony, Sedor telephoned the Postal Service on February 5 and left a message simply that he might not come to work for a week. He did not send or bring any documentation.

On February 22, when Sedor still had not returned to work or provided documentation, Pennington sent him a form letter stating that Sedor had been absent since February 3, detailing the documentation requirements for sick leave, and warning that failure to comply could result in discharge. The letter stated that if the absence was due to illness, the employee was required within five days of receipt of the letter to furnish a doctor's letter specifying the illness and treatment, an explanation of the inability to perform employment duties, and an estimated date for return to work. Sedor telephoned Pennington after receiving this letter.

Sedor testified that in that conversation, Pennington told him just to bring in his documentation when he felt better, and he told Pennington he hoped to return to work sometime in March. Pennington, in contrast, testified that when Sedor called, Pennington reminded him to bring in his documentation, and Sedor said he would be returning to work the next day. Sedor did not return to work the next day, however, nor did he furnish his medical documentation.

On March 22, when Sedor still had neither returned to work nor supplied any medical documentation, the Postal Service sent him a second letter, stating that it was preparing to terminate his employment because of his extended absence without permission since February 3. The letter instructed Sedor to contact the Service no later than March 30 to set up an appointment to discuss the matter. A meeting was held on April 6, and at that time Sedor first presented documentation with respect to his absence—two letters from his doctor and one from his psychologist. The psychologist sent a second letter two days later.

Sedor eventually appeared for work on approximately April 9, after a 51–day absence. On April 14, however, Pennington sent Sedor notice that the Service was terminating Sedor's employment effective May 23, 1988. Pennington testified that he had never allowed an employee to be absent without leave for such an extended period and had not discharged Sedor sooner only because Sedor was part of a special program and Pennington wanted to meet with him before taking any action. Pennington also testified that if Sedor had provided proper and timely documentation, the decision would have been different.

After a four-day bench trial, the district court concluded that Sedor had failed in two respects to establish that his discharge violated the Rehabilitation Act. First, the court found that Sedor was not "otherwise qualified" for the job within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a), because the Postal Service had shown that it was not possible to accommodate his disability through reasonable efforts. Decision at 20–23. Second, the court found that Sedor had not been discharged "solely by reason of

his handicap." *Id.* at 27; *see* 29 U.S.C. § 794(a).

As to Sedor's qualifications, the court assumed *arguendo* that Sedor had established a *prima facie* case that he was "otherwise qualified" for his job because "[a]s a theoretical matter, 'reasonable accommodation' was possible." Decision at 20. However, it found that, as a practical matter, the past accommodations made for Sedor's benefit had been unsuccessful for reasons largely beyond the Postal Service's control and that the Service had met its burden of showing that no further reasonable accommodation was possible. *Id.* at 20–23. The court found that further efforts at accommodating Sedor's disability would not be reasonable because the Postal Service's "first priority is the *timely* distribution of the mail," *id.* at 23 (emphasis in original); because further transfers would be inhibited by collective bargaining agreement limitations on employees' "cross[ing] crafts," *id.* (internal quotes omitted); because, after the numerous transfers already given, there was "no 'other place to use [Sedor],'" *id.* at 22 (quoting testimony of Pennington); because the prior efforts at accommodation had been frustrated by Sedor's attitude, lack of self-control, tendency to overreact, and sabotage of the job coach program, *id.* at 20–22; and because Sedor's "attendance record was so abysmal," *id.* at 23. Though the court did not precisely quantify Sedor's unauthorized absences, it found that, taking into account approved and unapproved absences from the time of his hiring in 1982 until the time of his discharge in 1988, Sedor's attendance rate was only 30%.

As to the reason for Sedor's discharge, the court credited the testimony of Pennington as to his communications with Sedor, Decision at 26 ("to the extent there are inconsistencies between the testimony of plaintiff and of Pennington, the Court must resolve such factual issues in Pennington's favor"), and found that the immediate cause of Sedor's dismissal was his prolonged absence without compliance with the applicable documentation requirements. The court found that Sedor had knowledge of those requirements. It found that, in light of the evidence (a) that Pennington had orally explained the documentation requirements to Sedor regularly and frequently prior to 1988, (b) that Sedor had previously been disciplined because of his failure to comply with documentation requirements, and (c) that Pennington had reminded Sedor orally of the documentation requirements during a telephone conversation in late February or early March of 1988, Sedor "was well aware of his need to provide appropriate documentation," *id.* at 26. The court concluded that, "[i]n light of [Sedor's] knowledge" of this requirement, "his absenteeism was not 'caused' by his handicap," *id.*, and that Sedor therefore "was not discharged from his position 'solely by reason of his handicap,'" *id.* at 26–27.

Judgment was entered dismissing the complaint, and Sedor has appealed, challenging both of the grounds on which the district court ruled against him. We need not address the finding that Sedor was not "otherwise qualified" to work for the Postal Service because, for the reasons below, we see no error in the district court's finding that Sedor was not discharged solely by reason of his disability.

## II. DISCUSSION

The Rehabilitation Act was enacted to deter discrimination by employers, including the Postal Service, against any individual with a disability, as defined in the Act, solely on the basis of that disability. *See, e.g.,* *Gilbert v. Frank,* 949 F.2d 637, 640 (2d Cir. 1991). Section 504 of the Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (as amended, without substantive change from version in effect in early 1988, *see* Rehabilitation Act Amendments of 1992, Pub.L. 102–569, § 102(p)(32), 106 Stat. 4344, 4360 (1992) (*e.g.,* substituting "disability" for "handicap"); House Conf.

Rep., No. 102–973, 102d Cong., 2d Sess. 161 (1992), *reprinted in,* 1992 U.S.C.C.A.N. 3822, 3830; Handicapped· Programs Technical Amendments Act of 1988, Pub.L. 100–630, § 206(d)(1), 102 Stat. 3289, 3312 (1988) (substituting "her or his handicap" for "his handicap")). In order to prevail on a claim under this section, a plaintiff must establish

> (1) that she is a "handicapped person" under the Act, (2) that she is "otherwise qualified" for the position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance.

*Doe v. New York University,* 666 F.2d 761, 774–75 (2d Cir.1981). If proof of any of the four elements is lacking, the claim must fail. *See, e.g., Heilweil v. Mount Sinai Hospital,* 32 F.3d 718 (2d Cir.1994) (affirming summary judgment against plaintiff on ground that her handicap was not within the scope of the Act); *Gilbert v. Frank,* 949 F.2d at 641–44 (affirming posttrial judgment against plaintiff for failure to show, *prima facie,* that he was "otherwise qualified"). Our discussion here focuses only on the third element.

■ In order to show that the discharge was "solely by reason of her or his disability," the plaintiff must show (a) that there was a "causal connection" between that disability and the employment decision, *see, e.g., Teahan v. Metro–North Commuter Railroad Co.,* 951 F.2d 511, 517 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992), and (b) that the disability was the only cause of the decision, *see, e.g., id.* at 515–16. If the employer can show that its decision was motivated at least in part by a factor other than the plaintiff's disability, the Rehabilitation Act claim must be rejected. The causal relationship between disability and decision need not be direct, in that causation may be established if the disability caused conduct that, in turn, motivated the employer to discharge the employee; however, to satisfy the "solely" part of the "solely by reason of" element, the disability must have been the only cause of the discharge-triggering conduct. Thus, "[o]nly if the only reason" for the conduct was the disability

could the employee be said to have been discharged "*solely* " by reason of his disability. *Id.* (emphasis in original).

■ Matters of motive and causation are questions of fact, and findings on these issues by the court as factfinder after a trial may not properly be overturned unless they are clearly erroneous. *See, e.g., United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 618 (2d Cir.1991); *see also Gilbert v. Frank,* 949 F.2d at 643. A finding cannot be termed clearly erroneous if it rests on a choice between two permissible inferences, *see Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949), or on a· not-illogical assessment of the credibility of the witnesses, *see Anderson v. Bessemer City,* 470 U.S. at 575, 105 S.Ct. at 1512 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

Sedor contends that the district court erred in finding that he was not discharged solely by reason of his disability, arguing that "the evidence clearly established that ... the reason for his discharge ... was ... his failure to timely provide medical documentation for his absence, which failure was caused by his inability to understand the applicable procedural rule, which inability was due to his handicap." (Sedor brief on appeal at 31.) This argument is squarely undercut by the court's findings of fact.

■ Though the court initially characterized the factual issue to be resolved in connection with the "solely by reason of" element as "whether or not plaintiff's *absenteeism* was 'caused' by his handicap," Decision at 25 (emphasis added), it is clear that by "absenteeism" the court meant absence with-

out authorization, and it proceeded to explore Sedor's claimed inability to understand the requirements for documentation to obtain authorization for his continued absence. The court found that Sedor had "knowledge of the [Postal Service's] rules, about which he received consistent *verbal* reminders," Decision at 26 (emphasis in original), and that Sedor thus "was well aware of his need to provide appropriate documentation to the [Postal Service] during the early portion of 1988, when he was AWOL for more than fifty days," *id.* These findings were amply supported by the testimony of Pennington, which the magistrate judge expressly credited over that of Sedor, and by evidence that failure to provide documentation had triggered disciplinary action against Sedor in the past. Since the court's inferences were permissible and there is no basis for rejecting its decision to credit the testimony of Pennington, its findings as to Sedor's knowledge and awareness are not clearly erroneous.

Thus, Sedor's contention that his failure to timely provide the required medical documentation was caused by his inability to understand the requirements, which lack of understanding he claims was the result of his learning disability, is contradicted by the court's permissible findings that Sedor did in fact understand. His failure to meet the documentation requirements, therefore, was not caused by his learning disability, and his discharge for failure to meet those requirements was not a violation of the Act.

## CONCLUSION

We have considered all of Sedor's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.