**Larry NADEL, Plaintiff,**

v.

**Eric K. SHINSEKI Secretary Department of Veterans Affairs, Defendant.**

**No. 12–CV–1902 (VSB).**

United States District Court, S.D. New York.

Signed Sept. 30, 2014.

Stewart Lee Karlin, Stewart Lee Karlin, Attorney–at–Law, New York, NY, for Plaintiff.

Patricia L. Buchanan, Susan D. Baird, U.S. Attorney's Office, SDNY, New York, NY, for Defendant.

## MEMORANDUM & ORDER

VERNON S. BRODERICK, District Judge:

Defendant's Motion for Summary Judgment is granted in its entirety because Plaintiff fails to state a claim of disability discrimination, retaliation, and hostile work environment under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.

Before the Court is the Motion of Defendant Eric Shinseki, as former Secretary of Veterans Affairs ("VA"), for summary judgment and to dismiss Plaintiff Larry Nadel's Complaint. (Doc. 20.) Plaintiff alleges that Defendant discriminated against him on the basis of his disability or perceived disability by unlawfully terminating his employment, retaliating against him for engaging in protected activity, and creating a hostile work, all in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. For the reasons set forth below, the Court grants Defendant's Motion in its entirety, and all of Plaintiff's claims are dismissed.

## I. Background

### A. Facts

The following facts are uncontested, unless otherwise noted. Plaintiff was hired by the VA on April 25, 2010 as a GS Grade 11 accountant in the Administrative Ser-

vices Fiscal Service division located in New York, New York. (Buchanan Decl. Ex. A, at US0143; Pl. 56.1 ¶¶ 1–3.)[1] Pursuant to VA regulations, Plaintiff's appointment was subject to a one-year probation period. (Pl. 56.1 ¶¶ 5, 14.) Angela Micalizzi was Plaintiff's supervisor during his employment with the VA. (Id. ¶ 4.)

Plaintiff ruptured his left knee patellar tendon two months after he began working at the VA, and was consequently on medical leave from June 23, 2010 to September 28, 2010. (Id. ¶ 16.) Dr. Ronald Light, Plaintiff's orthopedic surgeon, wrote a letter stating Plaintiff could return to work without stating any restrictions. (Id. ¶¶ 22–23; Buchanan Decl. Ex. F.) Plaintiff returned to work on September 29, 2010. (Pl. 56.1 ¶ 24.) At no point did Plaintiff request an accommodation. (Id. ¶ 25.)

Plaintiff walked with a limp and used a cane; however, his knee injury did not affect his ability to perform his job. (Nadel Decl. ¶¶ 23, 27; Pl. 56.1 ¶ 18.)[2] Although Plaintiff may have subjectively viewed himself as being disabled, he admits that no VA employee made any direct or indirect comments suggesting that he was regarded as disabled. (See Pl. 56.1 ¶¶ 19–21.)

As an accountant, Plaintiff was responsible for overseeing the accurate input of financial transactions and ensuring that sufficient funds were available. (Buchanan Decl. Ex. C, at US0541.) Specifically, Plaintiff's duties included, among other tasks, maintaining a Work–in–Process ("WIP") report, which tracked the payment status for ongoing projects, (Pl. 56.1 ¶ 9; Buchanan Decl. C, at US0545; Bu-

---

1. "Buchanan Decl." refers to the Declaration of Patricia Buchanan. (Doc. 39.) "Pl. 56.1" refers to Plaintiff's Response to Defendant's Rule 56.1 Statement. (Doc. 35.)

2. "Nadel Decl." refers to the Declaration of Larry Nadel. (Doc. 30.)

chanan Decl. Ex. J, at 86–87),[3] and managing the Online Certification System ("OLCS"), a program that monitored the outstanding liability invoices for the various hospital departments, (*see* Pl. 56.1 ¶¶ 9–10, 54–58; Buchanan Decl. B, at 55; Buchanan Decl. Ex. J, at 79).[4]

Prior to injuring his knee and going out on medical leave, Plaintiff began exhibiting performance problems in June 2010. (*Id.* ¶ 38.) Plaintiff was responsible for processing a WIP report by June 15, 2010, yet he failed to do so. (Buchanan Decl. Ex. I, at US0570.) On June 17, 2010, Plaintiff's supervisor, Angela Micalizzi, verbally counseled him concerning his failure to complete this assignment. (*Id.*)

Plaintiff's performance problems continued after his return from medical leave. As a result, Micalizzi continued to regularly counsel Plaintiff concerning chronic errors in his WIP reports, and advised him that the accurate maintenance of these reports was a critical part of his job responsibilities. (*Id.* at US0569–570, US0592, US0595, US0625.) Micalizzi also advised Plaintiff on several occasions that she expected him to work with FCP users to manage their budget and accurately use the OLCS. (*See id.* at US0586–87.)

Despite all of this counseling, Plaintiff's performance did not improve. (Buchanan Decl. Ex. K, at US0093.) As a result, Micalizzi issued Plaintiff a written counseling memorandum on January 7, 2011 describing, among other issues, his failure to maintain accurate WIP reports and properly manage the OLCS, and again advising him of her expectations for his work. (*Id.*) Following the written counseling memo-

randum Plaintiff continued to exhibit the same performance problems. (Buchanan Decl. Ex. I, at US0629–33.) Finally, on February 17, 2011 Micalizzi recommended that Plaintiff's employment be terminated for unsatisfactory work. (*Id.* at US0634.) Plaintiff's employment was then terminated for unsatisfactory work on April 13, 2011, prior to the expiration of his probation period. (Pl. 56.1 ¶¶ 85–90.) Plaintiff does not dispute that VA policy required Micalizzi to observe and monitor a probationary employee's performance, provide training or counseling to correct deficiencies, and take action to terminate a probationer who failed to demonstrate the qualifications for continued employment. (*Id.* ¶¶ 4, 12–15.)

On November 30, 2010 Plaintiff filed a complaint alleging employment discrimination with the VA's Equal Employment Opportunity ("EEO") Office. (*Id.* ¶ 26.) That complaint attached a copy of an October 29, 2010 email sent by Plaintiff to Micalizzi's supervisor complaining about eight instances of alleged "harassment" by Micalizzi, including her: (1) refusing to discuss Plaintiff's medical situation with his wife on June 23, 2010; (2) sending Plaintiff a letter on August 9, 2010, which took an unreasonable tone, and contained "accusations" that his medical documentation was "not enough"; (3) instructing Plaintiff to obtain passwords in an "accusatory tone"; (4) counseling Plaintiff concerning his work performance on October 5, 2010, and stating that he should not need help with his work because he is a GS Grade 11; (5) sending Plaintiff an email on October 6, 2010 that compared his work

---

3. Ex. J contains only excerpts of Micalizzi's deposition transcript. Defendant also provided this Court with all of the deposition transcripts for witnesses in the case on a digital video disc.

4. Each hospital department has a fund control point ("FCP") user, or individual responsible for the department's budget, who certifies or rejects its department's invoices in the OLCS. (*See* Buchanan Decl. B, at 55; Buchanan Decl. Ex. J, at 79.)

performance to that of a GS Grade 4 employee; (6) sending Plaintiff an email on October 20, 2010 instructing him to comply with the VA's leave procedures; (7) stating "you're ridiculous" during a counseling session on October 21, 2010; and (8) pointing out to Plaintiff that he was questioning her authority during a counseling session on October 26, 2010. (Pl. 56.1 ¶¶ 26–37; Buchanan Decl. Ex. H, at US0416.)

### B. *Procedural History*

Plaintiff initiated the EEO process on November 30, 2010, (Buchanan Decl. Ex. H, at US0416), and filed a formal EEO complaint alleging a hostile work environment on February 27, 2011, (*id.* at US0413). Plaintiff then filed the instant Complaint asserting claims of disability discrimination, retaliation, and hostile work environment in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, on March 15, 2012. (Compl. ¶ 1.)[5] Defendant answered the Complaint on July 18, 2012 (Doc. 5.) On January 15, 2014, Defendant moved for summary judgment and to dismiss the claims asserted against him in Plaintiff's Complaint, (Doc. 20), Plaintiff opposed Defendant's Motion on February 26, 2014, (Doc. 34), and Defendant submitted his Reply on March 19, 2014, (Doc. 37).

## II. *Legal Standard*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan,* 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed.R.Civ.P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). Under Rule 56.1(a) of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York ("Local Civil Rule") the moving party must submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."[6] Local Civil Rule 56.1(a).

---

5. "Compl." refers to the Complaint. (Doc. 1.)

6. Defendant asserts that Plaintiff's Response to Defendant's Rule 56.1 Statement ("Plaintiff's 56.1 Statement") is insufficient because it relies on Plaintiff's self-serving declaration, includes conclusory responses, and does not contain the required precise statements. (Doc. 37 at 2–3.) "[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Kobrand Corp. v. Abadia Retuerta S.A.,* No. 12–CV–154,

2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) (citing *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir.1996)).

For purposes of this Motion, I consider the factual allegations in Plaintiff's 56.1 Statement that are based on potentially admissible evidence; however, I do not credit the legal conclusions or conclusory allegations contained in that statement or Plaintiff's declaration. *See Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001) ("[F]actual allegations that might otherwise defeat a motion for summary

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.Civ.P. 56(c)(1). As such, Local Civil Rule 56.1 requires a party opposing a motion for summary judgment to include in its response a statement containing "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" followed by citation to admissible evidence. Local Civil Rule 56.1(b), (d).

In the event that "a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R.Civ.P. 56(e)(2), (3); *see* Local Civil Rule 56.1(c).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judg-

ment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non moving party," summary judgment must not be granted. *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002).

However, courts must exercise "an extra measure of caution" in determining whether to grant summary judgment in employment discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 603 (2d Cir.2006). Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir.2000).

### III. *Discussion*

#### A. *ADA v. Rehabilitation Act*

In the Preliminary Statement of Plaintiff's Complaint he alleges claims against the VA under both the ADA and the Rehabilitation Act. (Compl. ¶ 1.) Although the ADA protects against discrimination and retaliation by private sector employers as well as state and local government employers, it does not apply to the federal gov-

---

judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony."); *Mattera v. JPMorgan*

*Chase Corp.,* 740 F.Supp.2d 561, 570 (S.D.N.Y.2010) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.").

ernment.[7] *See* 42 U.S.C. § 12111. "In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability...." *Carby v. Holder*, No. 11–CV–5775, 2013 WL 3481722, at *8 n. 9 (S.D.N.Y. July 10, 2013) (citing *Rivera v. Heyman*, 157 F.3d 101, 104 (2d Cir.1998)). Plaintiff was employed by the VA, a federal agency. Therefore, only his claims under the Rehabilitation Act are viable.[8]

The Rehabilitation Act of 1973 provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794.

Under the Rehabilitation Act (the "Act"), the plaintiff bears the initial burden of demonstrating a prima facie case under the Act. *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994). The burden then shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse action.[9] *Id.* If the employer is able to do so, the burden shifts back to the plaintiff to show that the employer's stated reason is actually a pretext for discrimination. *Id.*

**B. *Disability Discrimination Claim***

■ To establish a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must demonstrate that: (1) he is disabled within the definition of the Act; (2) he is otherwise qualified for the position; (3) he was excluded from the position solely because of his disability; and (4) the program sponsoring his position receives federal funding. *See Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir.2003).

As discussed below, Plaintiff has not demonstrated that he is disabled under the meaning of the Rehabilitation Act, that he was otherwise qualified for the position, or that the VA fired him solely because of his purported disability. Therefore, he has failed to make out a prima facie case of disability discrimination, and his Complaint is dismissed. I address each of these elements below.

**1. Disabled Within the Meaning of the Rehabilitation Act**

■ An individual is disabled within the meaning of the Rehabilitation Act if the individual: (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an

---

**7.** I note that the standards used to determine a violation of the Rehabilitation Act are generally the same standards applied under the ADA. *See* 29 U.S.C. § 791(g); *Hodges v. Attorney Gen. of U.S.*, 976 F.Supp.2d 480, 490 (S.D.N.Y.2013).

**8.** In his Complaint, Plaintiff only states one claim for relief under Section 504 of the Rehabilitation Act. (Compl. ¶ 16.) However, lest there be any doubt, to the extent that the Complaint could be read to allege discrimination under the ADA against the VA, that claim is dismissed.

**9.** *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Nicholas v. City of N.Y.*, No. 07–CV134, 2013 WL 619562, at *14 (E.D.N.Y. Feb. 19, 2013) ("The cause of action for hostile work environment, while also a creature of Title VII, does not follow the *McDonnell Douglas* burden-shifting test.").

impairment. 29 U.S.C. § 705(20)(B) (using standard set forth in 42 U.S.C. § 12102(1)). Major life activities encompass "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). With regard to determining whether an individual has substantial limitation in performing manual tasks, the Supreme Court held that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of N.Y.,* 422 F.3d 47, 57 (2d Cir.2005).

▪ Aside from Plaintiff's conclusory claims that he is depressed and has difficulty sleeping, walking, and performing daily activities without assistance, (*see* Doc. 34 at 2), he has not identified any evidence demonstrating that his knee injury created a limitation upon a major life activity, let alone a substantial limitation. The law is clear that such statements, without more, are not proof of a substantial limitation on a person's major life activities. *See Farina v. Branford Bd. of Educ.,* 458 Fed.Appx. 13, 15 (2d Cir.2011)

(summary order) (finding conclusory statement of restrictions insufficient to demonstrate disability); *Sussle v. Sirina Prot. Sys. Corp.,* 269 F.Supp.2d 285, 301 (S.D.N.Y.2003) ("District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." (internal quotation marks omitted)).

Assuming for purposes of this analysis that I credit Plaintiff's assertion that his knee injury impaired his ability to walk or perform manual tasks, (Nadel Decl. ¶ 22), any such impairment is not a substantial limitation.[10] There is no dispute that Plaintiff's knee injury was temporary. Plaintiff testified that his injury was temporary and lasted fourteen weeks. (*See* Buchanan Decl. Ex. B, at 285:14–25.) A fourteen week injury is temporary and not substantially limiting. *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir.1999) (per curiam) (holding injury impairing ability to work for three and a half months temporary and not covered by the ADA).

Indeed, the evidence in the record demonstrates that Plaintiff is not suffering from a disability that limits his major life activities. Plaintiff's orthopedic surgeon cleared him to return to work without indicating any restrictions. (Buchanan Decl. Ex. F, at US0426). Moreover, once Plaintiff returned to work, he did not request an accommodation of any kind, (Pl. 56.1 ¶ 25). *Elfenbein v. Bronx Lebanon*

---

10. To the extent Plaintiff asserts that his limp or use of a cane limited his ability to walk, such limitations are not substantially limiting. *See Mitchell v. Girl Scouts of U.S.,* No. 98–CV–3730, 2003 WL 22705121, at *6 (S.D.N.Y. Nov. 17, 2003) (finding that use of a cane is not a substantial limitation); *Vaughnes v. United Parcel Serv., Inc.,* No. 97–CV–5849, 2000 WL 1145400, at *6 (S.D.N.Y. Aug. 14, 2000) (holding that a limp and inability to climb stairs are not substantial limitations); *see also Garvin v. Potter,* 367 F.Supp.2d 548, 562 (S.D.N.Y.2005) (dismissing disability claim because inability to walk long distances is not a substantial limitation and collecting cases).

*Hosp. Ctr.*, No. 08–CV–5382, 2009 WL 3459215, at *10 (S.D.N.Y. Oct. 27, 2009) (noting failure to request medical accommodation was evidence that physical condition did not substantially impair a major life activity). Finally, Plaintiff testified that his impairment did not limit his daily life activities. (Karlin Decl. Ex. B, at 286:2–7.) [11] Plaintiff's statements in his declaration contradicting this evidence cannot create a triable issue. *See Risco v. McHugh*, 868 F.Supp.2d 75, 108 (S.D.N.Y. 2012) (holding a party opposing summary judgment may not create a triable issue of fact by affidavit that disputes previous testimony) (collecting cases). This evidence suggests that rather than being substantially limited in his major life activities, Plaintiff was perfectly capable of performing major life activities. Finally, Plaintiff's argument that the VA must have regarded him as having a disability because he walked with a cane and had a noticeable limp, (Pl. Opp. at 13), fails for these same reasons.

Consequently, I grant Defendant's Motion as to Plaintiff's disability discrimination claim because he has not established that he is disabled within the meaning of the Rehabilitation Act.

### 2. Otherwise Qualified For the Position

█ Since Plaintiff failed to establish the prima facie element that he is disabled within the meaning of the Rehabilitation Act, I need not analyze the remaining prima facie elements of Plaintiff's Rehabilitation Act claim. However, lest there be any residual questions related to Plaintiff's claims, I will address the other elements. I find that Plaintiff has not established the existence of a dispute of material fact as to whether he is otherwise qualified for the position he held at the VA.

Here, Defendant terminated Plaintiff for unsatisfactory work performance during his probationary period. (Pl. 56.1 ¶¶ 14, 85–90.) Micalizzi regularly counseled Plaintiff concerning chronic errors in his WIP reports, and advised him that the accurate maintenance of these reports was a critical part of his job responsibilities. (Buchanan Decl. Ex. I, at US0569–570, US0592, US0595, US0625.) Micalizzi also advised Plaintiff on several occasions that she expected him to work with FCP users to manage their budget and accurately use the OLCS. (*See id.* at US0586–87.) Plaintiff continued to exhibit these same performance issues over the course of several months, and was terminated as a result. (Buchanan Decl. Ex. K, at US0093; Buchanan Decl. Ex. I, at US0629–34; Pl. 56.1 ¶¶·85–90.)

Plaintiff does not dispute that he was responsible for accurate WIPs or use of the OLCS, both of which were programs that contained errors. (*See* Pl. 56.1 ¶ 9, 11.) Rather, he argues that his performance was not deficient, (*id.* ¶¶ 45–60), the errors were not his fault, (*id.* ¶¶ 48–53, 55–56), and the errors were "blown grossly out of proportion," (Nadel Decl. ¶ 93). As is well established in this Circuit, Plaintiff's "subjective view of [his] performance does not create a genuine issue of material fact." *See Morris v. Ales Grp. USA, Inc.*, No. 04–CV–8239, 2007 WL 1893729, at *10 (S.D.N.Y. June 29, 2007). In any event, "where [an] employee[ ] receive[s] consistently poor evaluations or warnings regarding [his] performance, the second prong of the prima facie case is not satisfied." *Williams v. Alliance Nat'l Inc.*, No. 98–CV–7984, 2001 WL 274107, at *5

---

11. "Karlin Decl." refers to the Declaration of Stewart Lee Karlin. (Doc. 32.) Ex. B contains only excerpts of Plaintiff's deposition transcript. Defendant also provided this Court with the parties' entire deposition transcripts on a digital video disc.

(S.D.N.Y. Mar. 19), *aff'd,* 24 Fed.Appx. 50 (2d Cir.2001) (summary order); *see also Elhanafy v. Shinseki,* No. 10–CV–3192, 2012 WL 2122178, at *16 (E.D.N.Y. June 12, 2012) (finding plaintiff not qualified for position where plaintiff was terminated during probation period for unsatisfactory performance).

Therefore, I would also grant Defendant's Motion as to Plaintiff's disability discrimination claim because Plaintiff has not shown that he was otherwise qualified for the position.

### 3. Terminated Solely Because Of Disability

█ Even if Plaintiff had shown that he was disabled and otherwise qualified for the position, which he has not, Plaintiff failed to show that the VA terminated his employment solely because of his purported disability. To establish that element, Plaintiff was required to demonstrate: (1) a causal connection between his disability and termination; and (2) that his disability was the only reason for the termination. *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir. 1994). "If the employer can show that its decision was motivated at least in part by a factor other than the plaintiff's disability, the Rehabilitation Act claim must be rejected." *Id.*

Here, Plaintiff's performance problems began in June 2010, prior to his injury and medical leave. (Pl. 56.1 ¶ 39.) In addition, the evidence shows that at least a motivating, if not the only, reason for Plaintiff's termination was his unsatisfactory performance. *See supra* Part III.B.2. Finally, these performance deficiencies could not have resulted from Plaintiff's alleged disability, because he himself concedes that his knee injury did not affect his ability to perform his job, (Pl. 56.1 ¶ 18). *Cf. Sedor,* 42 F.3d at 746 (noting that "causation may be established if the disability caused con-duct that, in turn, motivated the employer to discharge the employee").

Accordingly, I find that Plaintiff has not demonstrated a nexus between his claimed disability and his termination, and therefore I would also grant Defendant's Motion as to Plaintiff's disability discrimination claim on this basis.

### C. *Retaliation Claim*

█ Plaintiff claims that Defendant terminated him in retaliation for filing his EEO complaint. (*See* Pl. Opp. 14–15.) To demonstrate a prima facie case of retaliation under the Rehabilitation Act, Plaintiff must show that: (1) he engaged in protected activity; "(2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *See Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002).

█ Plaintiff's retaliation claim fails because he has not demonstrated a nexus between his protected activity and the termination of his employment. The only evidence that Plaintiff has offered in support of a causal connection is the timing of approximately four months between his informal EEO complaint (November 30, 2010) and the subsequent termination of his employment (March 25, 2011). (*See* Pl. Opp. 24; Pl. 56.1 ¶¶ 26, 27, 38, 90.)

█ It is true that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir.2001) (internal quotation marks omitted). However, where a plaintiff relies exclusively on timing to demonstrate causation, the temporal proximity must be "very close." *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273,

121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (internal quotation marks omitted). But courts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation. *See Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir.1990) (finding three month gap, without other evidence, insufficient to show causation); *McManamon v. Shinseki,* No. 11–CV–7610, 2013 WL 3466863, at *13 (S.D.N.Y. July 10, 2013) (finding three and a half months insufficient to show causation); *Murray v. Visiting Nurse Servs. of N.Y.,* 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (holding that a passage of more than two months insufficient to show causation) (collecting cases). Therefore, I find that the elapsed time between Plaintiff's protected act and the termination of his employment is insufficient to demonstrate causation, and I grant Defendant's Motion to Dismiss Plaintiff's retaliation claim.

### D. *Hostile Work Environment Claim*

Although noting that Plaintiff "contends that he was subjected to ... a hostile work environment," Defendant has not specifically moved for the dismissal of Plaintiff's hostile work environment claim. (*See* Doc. 23 at 1.) In any event, with respect to Plaintiff's hostile work environment claim, (Compl. ¶ 9), I find *sua sponte* that Plaintiff failed to state a legally cognizable claim.

 To state a claim for hostile work environment, a plaintiff must demonstrate that the complained of conduct: "(1) is objectively severe or pervasive; (2) creates an environment that the plaintiff

[himself] subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." *See Goins v. Bridgeport Hosp.,* 555 Fed.Appx. 70, 71–72 (2d Cir. 2014) (summary order). In determining whether a work environment is objectively hostile or abusive, courts must review the totality of the circumstances by evaluating factors, such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 547 (2d Cir.2010) (internal quotation marks and emphasis omitted).

 Here, Plaintiff alleges eight incidents of harassment: (1) Micalizzi refused to discuss Plaintiff's medical situation with his wife on June 23, 2010; (2) Micalizzi sent Plaintiff a letter on August 9, 2010, which took an unreasonable tone, and contained "accusations" that his medical documentation was "not enough"; (3) Micalizzi instructed Plaintiff to obtain passwords in an "accusatory tone"; (4) Micalizzi counseled Plaintiff concerning his work performance on October 5, 2010, and indicated that he should not need assistance with his work because he is a GS Grade 11; (5) Micalizzi sent Plaintiff an email on October 6, 2010 that compared his work performance to a GS Grade 4; (6) Micalizzi sent Plaintiff an email on October 20, 2010 instructing him to comply with the VA's leave procedures; (7) Micalizzi stated "you're ridiculous" during a counseling session on October 21, 2010; (8) Micalizzi stated that Plaintiff was questioning her authority during a counseling session on October 26, 2010. (Pl. 56.1 ¶¶ 26–37; Buchanan Decl. Ex. H, at US0416–18.)

 In viewing the totality of the circumstances, it is clear that these incidents

are nothing more than "the sorts of everyday, unremarkable exchanges and minor altercations that are part and parcel of any workplace environment." *Hodges,* 976 F.Supp.2d at 498. The vast majority of these complaints relate to standard performance-based counseling, which Plaintiff concedes is pursuant to the VA's personnel policy. (Pl. 56.1 ¶¶ 12–15.) At most, Micalizzi's comments that Plaintiff was "ridiculous" and that he should not question her authority could be characterized as harsh. However, "[a]llegations of even constant reprimands and work criticism by themselves are not sufficient to establish a hostile environment claim." *Lucenti v. Potter,* 432 F.Supp.2d 347, 362 (S.D.N.Y.2006). In addition, Plaintiff has not described any conduct that was "physically threatening or humiliating" or that interfered with his work performance. To the contrary, Plaintiff repeatedly stated that his performance was not deficient. (*See* Pl. 56.1 ¶¶ 73–76–83.)

Therefore I dismiss Plaintiff's hostile work environment claim because Plaintiff has not identified any conduct that was objectively hostile or severe.

## IV. *Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in its entirety, and all of Plaintiff's claims are dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motion, (Doc. 20), and close the case.

SO ORDERED.